### LAURETTE FOURNIER *vs.* THE MIRIAM HOSPITAL.
### JOSEPH E. A. FOURNIER *vs.* THE MIRIAM HOSPITAL.

#### NOVEMBER 14, 1961.

PRESENT: Condon, C. J., Roberts, Paolino and Powers, JJ.

300

POWERS, J.  These two actions of trespass on the case for negligence were brought in the superior court by a husband and wife for injuries to the latter allegedly resulting from the negligence of the defendant's servants and agents.  In each case the defendant answered by way of a general denial and pleaded specially the immunity of G. L. 1956, §7-1-22, to which special pleas the plaintiffs demurred.  The cases are before us on their bills of exceptions to the overruling of their demurrers.

Since the issue is the same in each case we shall treat the bills of exceptions as though there were but one, that of the plaintiff wife, our decision therein, however, being dispositive of both.

It appears from the record that plaintiff was treated at the defendant hospital for a cancerous condition.  There were a series of such treatments consisting of X-ray therapy, so called, administered by its servants and agents using apparatus which was the property of or in the control of the hospital.

The declaration alleges in substance that by reason of negligence or a lack of skill on the part of defendant's agents and servants, plaintiff suffered a radiation ulcer in the left chest and eventual amputation of the left arm at the shoulder.

In addition to a general denial, defendant pleaded specially the provisions of G. L. 1956, §7-1-22, which read as follows:

> "No hospital incorporated by the general assembly of this state sustained in whole or in part by charitable contributions or endowments, or the Notre Dame Hospital, incorporated under chapter 1925 of the public laws, 1920, so long as it continues to be sustained in

whole or in part by charitable contributions or endowments, shall be liable for the neglect, carelessness, want of skill or for the malicious act, of any of its officers, agents or employees in the management of, or for the care or treatment of, any of the patients or inmates of such hospital; but nothing herein contained shall be so construed as to impair any remedy under existing laws which any person may have against any officer, agent or employee of any such hospital for any wrongful act or omission in the courts of his official conduct or employment."

To this plea plaintiff demurred on the ground that the statute relied on is unconstitutional in that it violates article I, §5, of the constitution of this state and art. XIV, §1, of amendments to the constitution of the United States.

Article I, §5, provides:

"Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

Before considering plaintiff's contention that §7-1-22 is unconstitutional it will be helpful to review the pertinent rule of law prevailing in this state prior to the enactment of that statute.

In *Glavin* v. *Rhode Island Hospital*, 12 R. I. 411 (1879), the plaintiff suffered the severance of two fingers at his place of employment. As immediate medical attention was required, he was taken to the Rhode Island Hospital, where its superintendent "committed [him] to the care of the surgical interne." The interne undertook to dress the wound, but a profuse hemorrhage occurred. He then repeatedly, but unsuccessfully, attempted to arrest the hemorrhage by ligating the arteries. Failing in this, he applied a tourniquet "so tightly as to stop circulation, and kept it applied for nearly seventeen hours, before the arrival of a

surgeon who was skilful enough to" perform the operation. The plaintiff suffered intense pain and the arm became greatly swollen and gangrenous, necessitating amputation just below the shoulder joint.

The rules of the defendant hospital provided, "in all cases, whether medical or surgical, requiring *immediate* and *important* action, or whenever there is any doubt as to the proper treatment, and in all cases of accident requiring immediate operation, the house physician or house surgeon shall send for the visiting physician or surgeon of the day, as the case may be, either medical or surgical, and if he cannot be found, then for any one of the visiting physicians or surgeons of the hospital * * *." *Id.* at 413.

It appears that the Rhode Island Hospital was incorporated as a nonprofitable, charitable institution. Glavin received and subsequently paid a bill of $21.71 which was for "board, washing, warmth, and the services of nurses and ward tenders."

At the conclusion of testimony therein the trial justice, relying on the authority of *McDonald* v. *Massachusetts General Hospital,* 120 Mass. 432, instructed the jury that there was no testimony which would support a verdict for the plaintiff and directed them to return a verdict for the defendant. This court in reviewing the trial justice's instruction to the jury observed that the Massachusetts case was decided on the ground that there was no evidence of a want of care on the part of the Massachusetts hospital in selecting its agent or servant, but observed further that the Massachusetts supreme court had strongly intimated that no recovery could have been had, if such lack of care had been shown, for the reason that any "judgment recovered against the corporation could only be satisfied out of funds which, being dedicated to the charity, could not be lawfully used to pay it."

The court questioned the dicta in the *McDonald* case, noting in a review of subsequent authorities that the doc-

trine had been rejected by most courts and taking special notice of the fact that the English case, *Holliday* v. *St. Leonard,* 11 C.B.N.S. 192, had been subsequently repudiated in *Mersey Docks* v. *Gibbs,* 11 H.L. 686.

It then proceeded to hold that a charitable corporation could be held responsible for the neglect of its agents or servants where, as in the *Glavin* case, the hospital had assumed responsibility for providing its patients with medical care, and the agents or servants through whom it acted failed to exercise due care in meeting the hospital's responsibility.

After the *Glavin* case, the general assembly in 1896 enacted the statute on which defendant in the case at bar relies. The plaintiff contends it is in violation of her constitutional rights and that art. I, §5, is a prohibition against legislative deprivation or abridgment of a vested right derived from the common law. She argues that in the *Glavin* case this court recognized the common-law rule applicable in the instant case, hence the legislative attempt to grant immunity is in derogation of her rights at common law and is unconstitutional.

The defendant, however, argues that art. I, §5, is a prohibition against the sale of justice and has in effect been so construed by this court on three occasions, namely, *In the Matter of Nichols,* 8 R. I. 50, *Perce* v. *Hallett,* 13 R. I. 363, and *Narragansett Electric Lighting Co.* v. *Sabre,* 50 R. I. 288. It has called to our attention the distinction established by legislation in a number of states, whereby the doctrine of due care has been supplanted by a requirement of gross negligence as a prerequisite to recovery by guest passengers, so called. The right of the legislature to make such a distinction in derogation of the common-law rule was challenged in *Pickett* v. *Matthews,* 238 Ala. 542, where a provision of that state's constitution similar to art. I, §5, was the basis for the contention which the plaintiff makes here. The Alabama court stated at page 545,

"But this provision does not undertake to preserve existing duties against legislative change made before the breach occurs. There can be no legal claim for damages to the person or property of any one except as it follows from the breach of a legal duty."

We are persuaded that defendant has stated the rule correctly. If it were otherwise the legislature would be barred from altering by way of restricting or extending the provisions of the common law in any manner, regardless of social changes and the experiences of man over centuries. It was never contemplated that the constitution should be so construed.

The plaintiff's contention that art. XIV, §1, of amendments to the federal constitution renders the immunity statute invalid is likewise without merit. Her argument is that the statute is a denial of due process and constitutes discrimination in violation of the equal privilege and protection clauses. This court in *In the Matter of Nichols, supra,* at page 54, observed that, "Although, in a free government, every man is entitled to an adequate legal remedy for every injury done to him, yet the form and extent of it is necessarily subject to the legislative power * * *."

Nor is an act of the legislature adopted pursuant to its power to declare public policy in violation of art. XIV of the amendments, if the act in question is neither capricious nor arbitrary in the sense that it does not discriminate between persons, groups or corporations falling within the same classification. See *Doherty* v. *Town Council,* 61 R. I. 248.

In the *Glavin* case this court in discussing *McDonald* v. *Massachusetts General Hospital, supra,* stated at page 425:
"The public is doubtless interested in the maintenance of a great public charity, such as the Rhode Island Hospital is; but it also has an interest in obliging every person and every corporation which undertakes the performance of a duty to perform it carefully, and

to that extent, therefore, it has an interest against exempting any such person and any such corporation from liability for its negligences. The court cannot undertake to say that the former interest is so supreme that the latter must be sacrificed to it. Whether it shall be or not is not a question for the court, but for the legislature."

. . The plaintiff argues further, however, that in the case of *Basabo* v. *Salvation Army, Inc.*, 35 R. I. 22, decided subsequent to the enactment of the statute in question, this court reaffirmed the rule laid down in the *Glavin* case, "that the doctrine of the general immunity of a charitable corporation from liability for damages, on the ground of public policy as involving the diversion of trust funds from the purposes of the trust, has no logical foundation * * *." She further asserts that in both the *Glavin* and *Basabo* cases we recognize the applicability of the doctrine of respondeat superior. She admits that the effect of §7-1-22 is to abrogate the rule of respondeat superior, but argues that such abrogation is unconstitutional. We hold this contention to be without merit.

In the *Glavin* case this court suggested that surgeons, physicians and nurses by the very nature of their services are not servants of the hospital corporation. It was stated in the *Basabo* case, at page 33, "it sets forth the true relation of a charitable corporation to the skilled attendants, such as physicians, surgeons and nurses, whose services are furnished to its patients, showing that such skilled attendants are not in general the servants of the corporation * * *."

It is clear from the language of the immunity statute that the legislature, declaring public policy, intended to abolish the doctrine of respondeat superior as the same may be related to officers, agents or employees of the hospital corporation in the management, care or supervision of patients. In the *Basabo* case the plaintiff was not a patient, nor was the defendant's servant one who administered to the sick.

No legislative immunity existed and this court adhered to the rule laid down in the *Glavin* decision. The question of whether such immunity as a matter of public policy is sound or otherwise may be open to debate, but such debate must find its forum in the legislature.

In *Michael* v. *Hahnemann Medical College & Hospital*, Pa., 172 A.2d 769, the Pennsylvania court reaffirmed the long-standing rule in that state that charitable hospitals or eleemosynary institutions are not answerable in tort for the negligence of their agents or employees. Refusing to be persuaded that the doctrine is archaic, that court stated at page 770, "If the doctrine of charitable immunity is, as the appellants contend, no longer suited to the times and should be dispensed with, the proper way to accomplish that end is prospectively by legislation and not retroactively by judicial ukase." Its position is exactly the reverse of that taken in *Glavin* v. *Rhode Island Hospital, supra,* but the principle involved is the same. There the immunity was first established by judicial decision and the legislature thereafter took no action, apparently satisfied that the decision of the court represented sound public policy. In this state our court established the rule against such immunity and the general assembly enacted the statute in question.

So, too, in the *Michael* case, *supra,* the appellants questioned the constitutionality of previous decisions in that state. The contention was based on the following provision of the Pennsylvania constitution: "All courts shall be open; and every man for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law * * *." It is to be noted that although this language differs from that in art. I, §5, of our constitution, the spirit and intent are identical. In passing on this contention the Pennsylvania court commented at page 778, "The Constitution does not mention, let alone grant, a remedy against persons *who do not* commit an injury, but are liable, if at

all, under the judicially created doctrine of respondeat superior."

We are in accord with the reasoning of the Pennsylvania court in this regard. The plaintiff here has not been deprived of any right which was hers at the time the statute in question was adopted. Her right arose later and the legislature has left her with a remedy against the person or persons who were actually negligent, if such negligence existed in fact.

In each case the plaintiff's exception is overruled, and each case is remitted to the superior court for further proceedings.

### On Motion for Reargument.
#### NOVEMBER 28, 1961.

Per Curiam. After our opinion herein was filed, the plaintiff in each case by permission of the court presented a motion for leave to reargue on certain grounds therein set forth.

Upon consideration of such motions, we are of the opinion that point 4 only is of sufficient importance to warrant a reargument.

Motion granted in each case as to point 4 and in all other respects denied.

### Decision on Motion for Reargument.
#### APRIL 12, 1962.

Per Curiam. After our decision in the above cases was filed, the plaintiff in each case requested and received permission to file a motion for reargument. We granted the motions and allowed them to reargue only on the question of whether G. L. 1956, §7-1-22, discriminates among persons, groups and corporations falling within said classification. *Fournier* v. *Miriam Hospital,* 93 R. I. 299, 308, 175 A.2d 298, 302.

At the reargument the parties presented briefs and were heard orally. After careful consideration thereof we are of the opinion that plaintiffs have not presented any valid reason for changing our decision.

Therefore each case is remitted to the superior court for further proceedings in accordance with our original opinion.

*William G. Gilroy, Gerald A. Oster, Edward L. Gnys, Jr.,* for plaintiffs.

*Sherwood and Clifford, Raymond E. Jordan, Kirk Hanson, E. Howland Bowen,* for defendant.