308 A.2d 508.

TEMPLE SINAI - SUBURBAN REFORM TEMPLE *vs.*
ISIDOR RICHMOND *et al.*

AUGUST 16, 1973.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

KELLEHER, J. The question raised in this appeal is: How far has the "citadel" fallen?

The answer is: All the way!

Isidor Richmond and Carney Goldberg are architects (architects). In March, 1961, they agreed to prepare the plans and specifications for a new synagogue to be located in Cranston and to be known as Temple Sinai Suburban Reform Temple (Temple). Officials of the Temple hired Molony & Rubien Construction Company (Molony & Rubien) as the general contractors. In August, 1961, Molony & Rubien purchased the bricks which were to be part of the Temple's exterior design from P. L. Monroe & Son, Inc. (Monroe). The bricks had been manufactured by Acme Brick Company (Acme).

The construction of the Temple was completed in 1962. Sometime in 1965, the Temple trustees were informed that the exterior brick was beginning to "spall." To a bricklayer, the word "spall" is a word of art. It signifies the breaking off, chipping, flaking or disintegration of the facing of a brick. In 1965, the estimated cost of repairing the spalling was $9,450.

Temple Sinai instituted this litigation in February, 1967, when it sued the builder, the architects, and Acme. In portions of its complaint concerning the architects, the Temple alleges that the architects were liable because they were negligent in drawing up the specifications and they breached "certain warranties." Later, in June, 1971, the architects were permitted to file as third party plaintiffs against Acme. In their complaint, the architects allege that if either of them is liable to the Temple, his liability will be based solely on the defective materials manufactured by Acme. The architects are before us on their appeal from an order entered in the Superior Court granting Acme's motion for a summary judgment on the grounds that there is "no privity between the parties" and the complaint "does not state a cause of action against the third party defendant."

·At this point we shall briefly review the path privity has taken in this jurisdiction as defendants in negligence cases have sought to protect themselves from tort liability which is based upon some contractual obligation.

We begin with *McCaffrey* v. *Mossberg & Granville Mfg. Co.*, 23 R. I. 381, 50 A. 651 (1901), where the plaintiff who sought damages from an alleged negligent manufacturer of machinery could not prevail because of a lack of privity and a failure to describe the machinery as "imminently dangerous." One of the recognized exceptions to a manufacturer's nonliability to the remote vendee or other third persons has been in those instances where the damages were caused by a product which has been variously described as "imminently dangerous," "inherently dangerous," or "intrinsically dangerous."

The first significant departure from the requirement of privity can be found in *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43, 144 A. 884 (1929), where the maker of food who furnished through a retailer unwholesome food was held liable for injuries suffered by a customer who consumed a mixture of ice cream and bits of glass. In his concurrence in *Henry* v. *John W. Eshelman & Sons*, 99 R. I. 518, 525, 209 A.2d 46, 50 (1965), Mr. Justice Joslin observed that since the doctrine of privity was born of judicial fiat, it could be terminated in the same fashion.

Within recent times our actions have given meaning to the Justice's words. In *Rampone* v. *Wanskuck Buildings, Inc.*, 102 R. I. 30, 227 A.2d 586 (1967), we ruled that a landlord is liable to a tenant or any other person properly on the premises whose injuries are attributable to the landlord's failure to abide by his promise to repair the premises. A secretary who was injured because the brakes of her boss's recently inspected automobile became inoperable was permitted to sue the inspector because of negligence in failing to discover the defect. *Buszta* v. *Souther*, 102

238

R. I. 609, 232 A.2d 396 (1967). The defense of lack of privity was rejected and the rule of strict liability was imposed in those instances when the consumer sustains injuries from a product that has been improperly designed, manufactured, or packaged. *Ritter* v. *Narragansett Elec. Co.*, 109 R. I. 176, 283 A.2d 255 (1971).

Much that has been written by judges and legal pundits about the assault upon the citadel of privity need not be repeated. The time has come to declare in simple, direct language that in a tort action for negligence against a manufacturer or supplier whether or not privity exists is of no moment. In such circumstances, the liability or non-liability can be determined by the application of the usual principles of tort law regardless of the lack of a contractual relationship between the parties or whether damages are sought for injuries to persons or property. We offer the following support for the views expressed here. *Carter* v. *Yardley & Co.*, 319 Mass. 92, 64 N.E.2d 693 (1946); *Spence* v. *Three Rivers Builders & Masonry Supply*, 353 Mich. 120, 90 N.W.2d 873 (1958); *Steinberg* v. *Coda Roberson Constr. Co.*, 79 N. M. 123, 440 P.2d 798 (1968); *Corprew* v. *Geigy Chemical Corp.*, 271 N. C. 485, 157 S.E. 2d 98 (1967); *American Reciprocal Insurers* v. *Bessonette*, 235 Ore. 507, 384 P.2d 223 (1963); *Smith* v. *Atco Co.*, 6 Wis.2d 371, 94 N.W.2d 697 (1959); *Carolina Home Builders, Inc.* v. *Armstrong Furnace Co.*, 259 S. C. 346, 191 S.E. 2d 774 (1972); 1 Frumer & Friedman, *Products Liability* §5.03, 5.03(1) n. 20, 5.03(2), 5.03(5)(b); *The Assault Upon The Citadel*, 69 Yale L. J. 1099 (1960); *The Fall of the Citadel*, 50 Minn. L. Rev. 791 (1966); 2 Harper & James, *Torts* §28.1 at 1535; Prosser, *Torts* §96 at 643 (4th ed. 1971).

Having had our say as to privity, we now turn to the applicability of what we have said to the case at bar.

Initially, we turn to the motion filed by Acme. It is

labeled· as a motion for summary judgment. This is a misnomer. The motion is in fact and·in law a motion to dismiss for failure to state a claim upon which relief can be granted as is set forth in Super. R. Civ. P. 12(b)(6). Here, the only document presented· for the trial justice's inspection was the architects' third party complaint. If the court had considered evidence not incorporated in the final pleadings, the 12(b)(6) motion would have been transferred into a motion for summary judgment·under rule 56. *Menzies* v. *Sigma Pi Alumni Ass'n,* 110 R. I. 488, 294 A.2d 193 (1972); *DiBello* v. *St. Jean,* 106 R. I. 704, 262 A.2d 824 (1970); *Warren Education Ass'n* v. *Lapan,* 103 R. I. 163, 235 A.2d 866 (1967). In order to justify a dismissal of a complaint under a 12(b)(6) motion, the trial justice must be satisfied beyond.a reasonable doubt that the plaintiff would not be entitled to any relief no matter what state of facts could be found in support of his claim. In making such a determination, he, and we on appeal, are bound to resolve all doubts in the plaintiff's favor and accept all his allegations as true. *Goldstein* v. *Rhode Island Hospital Trust Natl. Bank,* 110 R. I. 580, 296 A.2d 112 (1972); *Noble Co.* v. *Mack Financial Corp.,* 107 R. I. 12, 264 A.2d 325 (1970).

The third party complaint was authorized by Super. R. Civ. P. 14. The pertinent portion thereof reads:

"* * * a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who· is or may be liable to him for all or part of the plaintiff's claim against him."

A third party claim may be asserted upon rule 14 when the third party's liability is in some way dependent upon the main claim or when the third party is secondarily liable to the defendant. It is immaterial whether the basis of the secondary liability is indemnity, subrogation, contribution, warranty or some other theory. 6 Wright &

Miller, *Federal Practice & Procedure* §1446 (1971). The trial justice observed that in the absence of any specific contractual relationship between the architects and Acme, there was no duty owed by Acme to the architects.

At this point, it is uncertain whether the architects were bound to inspect the bricks manufactured by Acme. We think it is foreseeable that someone such as the architects might have been harmed by Acme's alleged manufacturing deficiencies. It may be that evidence will establish a relationship of joint tortfeasors between the third party plaintiffs and the third party defendant. Furthermore, it is also conceivable that as the evidence is developed, the duty imposed upon Acme, especially in the light of the Temple's allegations as to the "certain warranties" made to it by the architects, may be one of law based upon the doctrine of indemnity or contribution. On the state of the record, we are not convinced beyond a reasonable doubt that the third party complaint does not state a claim upon which relief can be granted.

The third party plaintiff's appeal is sustained. The order appealed from is vacated and the case is remitted to the Superior Court for further proceedings.

Mr. Justice Joslin did not participate.

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for plaintiff.

*Keenan, Rice, Dolan & Reardon, John T. Keenan* (deceased) for defendants Isidor Richmond and Carney Goldberg;

*Tillinghast, Collins & Graham, Thomas R. Wickersham,* for third-party defendant, Acme Brick Company.