**Eveline WALSH**

v.

**Richard GOWING et al.**

No. 82–358–M.P.

Supreme Court of Rhode Island.

June 21, 1985.

Reargument Denied Aug. 2, 1985.

---

Kathleen Managhan, Corcoran, Peckham & Hayes, P.C., Newport, for plaintiff.

Mark S. Mandell, Susan M. Carlin, Mandell, Goodman, Famiglietti & Schwartz, Ltd., Providence, amicus curiae, for plaintiff.

John F. Dolan, Rice, Dolan, Kiernan & Kershaw, Providence, for Parson Brinckerhoff Quade & Douglas, Inc.

Joseph A. Kelly, Carroll Kelly & Murphy, Providence, for Richard Gowing.

Arlene Violet, Atty. Gen., Shelia Tobie Swan, Sp. Asst. Atty. Gen., for the State of R.I.

William J. Sheehan, Peter L. Kennedy, John Tarantino, Adler Pollack & Sheehan, Providence, amicus curiae on behalf of the Construction Industry Coalition.

George Vetter, Vetter & White, Inc., amicus curiae on behalf of the R.I. Bar Assoc.

## OPINION

SHEA, Justice.

This matter is before us on the defendant's petition for writ of certiorari. The defendant seeks review of the Superior Court's grant of the plaintiff's motion to strike the defendant's affirmative defense asserted under G.L.1956 (1969 Reenactment) § 9–1–29, as enacted by P.L.1975, ch. 119, § 1. We subsequently granted the plaintiff's motion to expand the issues considered in this petition to include the issue of the constitutionality of § 9–1–29. The issues thus presented for our review are (1) whether a bridge is an "improvement to real property" for the purposes of § 9–1–29 and (2) whether § 9–1–29 violates the guarantee of access to the courts contained in art. I, sec. 5, of the Rhode Island Constitution. After oral argument, the court decided, because of the importance of the question involved, to solicit the submission of amicus curiae briefs. The briefs have been received by the court, and have been very helpful. We reverse the order to strike, uphold the constitutionality of § 9–1–29, and remand the case to the Superior Court for further proceedings.

The plaintiff, Eveline Walsh, was severely injured in an automobile accident on September 21, 1980. She was a passenger in a vehicle, traveling east on the Newport Bridge, that crossed into the west-bound lane and collided head-on with another vehicle. The plaintiff brought suit against the following parties: the respective owners and operators of the cars involved in the collision, the Rhode Island Turnpike and Bridge Authority, and, by amended complaint, Parsons, Brinckerhoff, Quade and Douglas, Inc. (Parsons), the architectural firm that designed the bridge.

On February 18, 1982, Parsons filed an answer asserting as an affirmative defense that "[p]laintiff's action is barred by the Statute of Limitations of 10 years contained in R.I.Gen.Laws 1956, § 9–1–29 since more than 10 years have elapsed since the substantial completion of the Newport Bridge." The plaintiff moved to strike that defense, arguing that the Newport Bridge is not an improvement to real estate for the purposes of § 9–1–29. The Superior Court granted the motion to strike, and defendant petitioned for a writ of certiorari, which we granted. The plaintiff moved to dismiss the petition for certiorari on the ground that it is rendered moot by this court's decision in *Kennedy v. Cumberland Engineering Co.*, — R.I. ——, 471 A.2d 195 (1984), or in the alternative, to expand the issues before us to include a challenge to the constitutionality of § 9–1–29. We denied the motion to dismiss and directed the parties to brief and argue the issue of constitutionality.

In 1975 the General Assembly enacted § 9–1–29 to require that claimants who bring actions in tort against constructors of improvements to real property must do so within ten years of the substantial completion of the improvement. Section 9–1–29 reads:

"Constructors of improvements to real property—Immunity from liability.—No action (including arbitration proceedings) in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property or against any contractor or subcontractor who constructed such improvements to real property or materialmen who furnished materials for the construction of such improvements on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements

or in the materials furnished for such improvements:

(1) for injury to property, real or personal, arising out of any such deficiency;

(2) for injury to the person or for wrongful death arising out of any such deficiency; or

(3) for contribution or indemnity for damages sustained on account of any injury mentioned in clauses (1) and (2) hereof; more than ten (10) years after substantial completion of such an improvement, provided, however, that this shall not be construed to extend the time in which actions may otherwise be brought under §§ 9–1–13 and 9–1–14."

█ The first question before us is whether the Newport Bridge is an improvement to real property for the purposes of § 9–1–29. To respond to this question, we must determine the General Assembly's intent in using the phrase "improvements to real property." It is well settled that "statutory intent is to be found in the words of a statute, if they are free from ambiguity and express a reasonable meaning." *Little v. Conflict of Interest Commission*, 121 R.I. 232, 237, 397 A.2d 884, 887 (1979). "Stated another way, statutory terms must be given their plain and ordinary meaning unless a contrary intent is clearly shown on the face of the statute." *Id.* Thus, we cannot accept plaintiff's argument that § 9–1–29 should be construed narrowly to apply only to those responsible for construction of housing, commercial buildings, or other similar structures. The plaintiff hinges this argument upon the fact that the Rhode Island Builders' Association sponsored the bill with the intent to protect those engaged in such construction. The statute, however, contains no specific, limiting language or definition of improvements to real property. That an organization with a relatively narrow self-interest sponsored the bill has no bearing on judicial interpretation of the legislative intent, particularly in circumstances in which, as here, the statutory language gives no indi-cation that the General Assembly intended such a narrow construction.

The General Assembly undoubtedly enacted § 9–1–29 as a response to the demise of the doctrine of privity of contract. With the extinction of the doctrine, architects and engineers (among others) no longer had immunity from unlimited potential liability to third parties, upon the completion and acceptance of the improvement to real property. *See Temple Sinai—Suburban Reform Temple v. Richmond*, 112 R.I. 234, 308 A.2d 508 (1973) (detailing the history of the demise of the privity of contract doctrine); *see also* Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non-Action*, 18 Cath. U.L.Rev. 361 (1969); Note, *Actions Arising Out of Improvements to Real Property: Special Statutes of Limitation*, 57 N.D.L.Rev. 43 (1981); Annot., 93 A.L.R.3d 1242 (1979).

█ In this context, the statute must be read to have been intended to apply to all architects, professional engineers, contractors, subcontractors, and materialmen, not just those who build houses or commercial buildings. The problem addressed was a broad exposure to potential liability. The statutory language is broad, and there seems no reason not to read it as applicable to all those specified in the statute, whether they build houses, commercial buildings, parking structures, bridges, or anything that can reasonably be defined as an improvement to real estate. *See, e.g., Patraka v. Armco Steel Co.*, 495 F.Supp. 1013 (M.D.Pa.1980); *Kozikowski v. Delaware River Port Authority*, 397 F.Supp. 1115 (D.N.J.1975); *Milligan v. Tibbetts Engineering Corp.*, 391 Mass. 364, 461 N.E.2d 808 (1984); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972); *Keeler v. Commonwealth of Pennsylvania, Dept. of Transportation*, 56 Pa. Commw. 236, 424 A.2d 614 (1981) (all cases recognizing that roads or bridges are improvements to real estate for the purposes of architect and engineer statutes of repose similar to § 9–1–29). We believe that in

enacting § 9–1–29, the General Assembly sought to provide constructors of improvements to real property in general a reasonable limitation on their greatly expanded potential liability. We therefore conclude that the language of § 9–1–29, "improvements to real property," applies to the Newport Bridge.

The plaintiff next asserts that § 9–1–29 violates art. I, sec. 5, of the Rhode Island Constitution. She argues that our decision in *Kennedy v. Cumberland Engineering Co.,* —— R.I. ——, 471 A.2d 195 (1984), where we struck down as unconstitutional the products-liability statute of repose, § 9–1–13(b), requires similar treatment with respect to § 9–1–29. We do not agree.

In *Kennedy,* we addressed a statute that completely denied "products-liability claimants of their day in court, notwithstanding the merits of their claims and the direct liability of the potential defendants."

R.I. at ——, 471 A.2d at 199. It was this total denial of access to the courts that violated the constitutional guarantee of a remedy for every wrong found in art. I, sec. 5.

Section 9–1–13(b) abrogated the right to all civil products-liability actions not brought within ten years of the date the product was purchased. This legislation eliminated any potential actions that the plaintiff had against possible defendants, either under a strict-liability/products-liability theory or a traditional negligence theory. *See Ritter v. The Narragansett Electric Co.,* 109 R.I. 176, 283 A.2d 255 (1971) (products-liability action is not exclusive; recovery for negligence also available).

The effect of § 9–1–13(b) was thus quite different from the effect of the statute challenged and upheld in *Thornton v. Mono Manufacturing Co.,* 99 Ill.App.3d 722, 54 Ill.Dec. 657, 425 N.E.2d 522 (1981). The Illinois products-liability statute of repose challenged in *Thornton* was quite similar to § 9–1–13(b). The Illinois statute, however, did not completely deny products-liability claimants of their day in court, notwithstanding the merits of their claims. The court expressly noted that although the statute denied a plaintiff the right to a strict-liability action, a negligence action remained available. *Id.* at 728, 425 N.E.2d at 526. Therefore, unlike the statute we struck down in *Kennedy,* the Illinois products-liability statute of repose merely limited or placed an additional burden upon the plaintiff's right to have his claim adjudicated by the courts.

▇ As we stated in *Kennedy,* art. I, sec. 5, of the Rhode Island Constitution should not be interpreted to bar the General Assembly from enacting laws that limit or place a burden upon a party's right to bring a claim in our courts. —— R.I. at ——, 471 A.2d at 198. Statutes of limitation, *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 463–64, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295, 303 (1975); *Young v. Park,* 116 R.I. 568, 573, 359 A.2d 697, 700 (1976), and a requirement of filing fees, *Perce v. Hallett,* 13 R.I. 363 (1881), have been upheld as reasonable limits or burdens upon a claimant's right of access to the courts.

▇ Nor do we interpret art. I, sec. 5, of our constitution as removing the General Assembly's plenary power to change the substance of the common law. This court, in *Fournier v. Miriam Hospital,* 93 R.I. 299, 175 A.2d 298 (1961), upheld a statute that limited the effect of the doctrine of respondeat superior, to make charitable hospitals immune from liability for the negligent actions of "officers, agents or employees of the hospital corporation in the management, care or supervision of patients." *Id.* at 306, 175 A.2d at 302. Although the General Assembly's change of the substantive law made it impossible for the plaintiffs to reach charitable hospitals, the statute did not deprive the plaintiffs of their day in court. Instead, it left the plaintiffs with a remedy against agents or employees of the hospital who were the initial tortfeasors.

■ In the case before us, an improver of real property will be subject to suit for ten years after its structure has been substantially completed. Thereafter, plaintiffs seeking damages can resort to the courts for redress of injuries arising out of improvements to real property against the owners or operators of that improved property.

·The judiciary, in abrogating the common-law doctrine of privity of contract, exposed architects, engineers, and other improvers of real property to unlimited potential liability to third parties. The General Assembly responded by enacting § 9–1–29 to limit this exposure. In doing so, it acted well within its constitutional authority. We recognize that economic forces within the marketplace would have eventually reflected this increased potential liability. It is not our position, however, to question the propriety of the General Assembly's judgment in this case. It stepped in and placed limits upon this newly exposed common-law source of liability. It has done so without unreasonably denying injured parties access to the courts. We therefore hold that § 9–1–29 does not violate the command of art. I, sec. 5, of our State Constitution.

For these reasons, the order to strike is quashed and the papers of the case are remanded to the Superior Court with our decision endorsed thereon.