DECISION ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT
In both of the above-captioned asbestos actions, one of the multiple corporate defendants filed a motion for summary judgment. Because these motions share common issues, this Court will address them collectively.
 Issues Presented
At threshold, the issue is whether Rhode Island Gen. Laws 1956 §9-1-29, a statute of repose that provides a ten-year limit on the liability of "materialmen" who furnish materials used for the construction of improvements to real property, applies in cases involving exposure to certain mass-produced asbestos-products used in the construction process. If so, this Court must determine whether disputed issues of material fact regarding what constitutes the "construction of an improvement" preclude the grant of summary judgment based on the application of the statute.
 Short Answers
The ten-year liability limitation of § 9-1-29 applies to mass-produced asbestos-products used in the construction process. According to its terms, § 9-1-29 provides protection for suppliers who furnish materials for the construction of improvements to real property, as well as for the contractors and subcontractors who do the physical construction. Despite seemingly harsh or inconsistent results, § 9-1-29 is broadly written, and our Supreme Court has held that the Legislature intended a broad application. Neither the statute itself nor the cases interpreting it make any distinction between finished improvements and mass-produced materials subject to operation of the statute only through their attachment to real property, as argued by the defendants in both cases. Moreover, as applied to asbestos-litigation generally, and in these cases specifically, § 9-1-29 does not violate the "remedy for every wrong" provision of article 1, section 5 of the Rhode Island Constitution.
However, in order to grant summary judgment based on this statute, a defendant must establish, with evidence admissible and sufficient to satisfy summary judgment burdens, that there is no factual dispute as to whether a plaintiff's asbestos-related injury resulted from exposure suffered during the construction of an improvement to real property or from the materials furnished for that purpose. Our Supreme Court defines an "improvement" as a valuable addition made to property or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes. As with a statute of limitations, the decision to apply a statute of repose is a mixed question of fact and law that requires a threshold finding on this issue. Consequently, the harsh remedy of summary judgment may be granted only when a defendant demonstrates the absence of a factual dispute on this issue.
After reviewing the record in the two cases sub judice, summary judgment is denied for Defendants Dresser Industries, Inc. and Halliburton Company in Shauan v. ABB, Inc., et al, C.A. No. 01-4147 and granted for Defendant Eastern Refractories Company, Inc. in Muliero v. AC and S, Inc., et al., 99-2703. A comparison of these two cases will be illustrative.
 Factual Background
In Shauan v. ABB, Inc., et al, C.A. No. 01-4147, Daniel Shauan (decedent) was employed from 1964 to 1984 as a boiler technician at various job sites around New England. One of the places where decedent worked was E. Rosen Candy Company in Pawtucket, Rhode Island. After his retirement, decedent became ill and commenced a suit against a number of manufacturers, distributors, and contractors, claiming that his illness resulted from occupational exposure to asbestos. Margaret Cambra, in her capacity as executrix of decedent's estate (Plaintiff), continued to pursue decedent's action subsequent to his death.
Among the named defendants in Plaintiff's action are Dresser Industries, Inc. (Dresser) and Halliburton Company (Halliburton). These apparently separate entities are both sued as successors to Worthington Corp. f/k/a Worthington Pump Inc. Plaintiff claims that while at E. Rosen Candy, decedent worked with asbestos gaskets and packing on pumps and a compressor bearing the name "Worthington." According to decedent's deposition transcript, his job entailed replacing gaskets in order to repair air leaks in pump flanges. (See April 1, 2002 Deposition at 42-43.)
Together, Dresser and Halliburton filed a single, consolidated motion for summary judgment based on the statute of repose. Dresser and Halliburton assert that there is no disputed issue of material fact for this Court's determination, as the Rhode Island Supreme Court has concluded that a pump can constitute an improvement to real property. The Plaintiff argues that the insulation, cement, gaskets, and packings — used by the decedent to service an already-installed pump — were not improvements and had no effect on real property. At the least, Plaintiff argues that the issue of whether the decedent's use of the asbestos-containing products constituted an improvement to real property is an issue of fact best left to the determination of a jury.
In Muliero v. A C and S, Inc., et al., 99-2703, Mathew Muliero (decedent) was employed as a "rigger," a person charged with the installation and movement of heavy equipment and machinery such as boilers and turbines. Decedent held this occupation for more than thirty-five years, working most of his career for a rigging company operated by Douglas Lamb. After his retirement, decedent became ill and commenced a suit against a number of manufacturers, distributors, and contractors, claiming that his illness resulted from occupational exposure to asbestos. Diane Muliero, decedent's wife (Plaintiff), continued to pursue decedent's action subsequent to his death.
One of the named defendants in Plaintiff's action is Eastern Refractories Company, Inc. (ERCO). ERCO is both a distributor and installation contractor of insulation and refractory materials. Its employees often worked on projects with the decedent, cutting, spraying, and applying heat-resistant pipe covering and constructing "brick-work" to facilitate the installation process. Plaintiff claims that decedent, while employed as a rigger, was exposed to these products used by ERCO's employees, some of which contained asbestos.
Like Dresser and Halliburton, ERCO moves for summary judgment based on § 9-1-29. ERCO's position is that the installation of heavy equipment or machinery constitutes an "improvement to real property" for purposes of the statute of repose. The Plaintiff objects to ERCO's motion. As inShauan, the Plaintiff argued that the statute of repose was meant to cover injuries suffered as a result of finished improvements, not to cover exposure to mass-produced asbestos products used in the construction process. Further, the Plaintiff asserts that ERCO's interpretation of the statute would lead to an absurd result because application of the statute would yield different outcomes for exposure to the exact same asbestos-containing products based merely on the product's attachment to real property, as opposed to the use of the products in motor homes or ships. Also, although the statute of repose has been found to satisfy the "access to justice" provision of the Rhode Island Constitution, Plaintiff claims that the statute cannot be constitutionally applied to her because, due to the dormancy period involved in asbestos-injury cases, there remain no other available defendants against whom she may seek a remedy.
 Standard of Review
Summary judgment may be granted only when, after all reasonable inferences have been drawn in favor of the nonmoving party, no material facts are in dispute. Lauro v. Knowles, 785 A.2d 1140, 1141 (R.I. 2001). Once the moving party has demonstrated that there is an absence of disputed facts, the nonmoving party bears the burden of coming forward with an affirmative showing that issues of fact are indeed in dispute.Id. This can be accomplished through affidavits or the production of other evidence. Id. The nonmoving party may not rely upon mere allegations or denials in his pleadings to establish the existence of a genuine issue of material fact. Id.
As with a statute of limitations, the question of whether a statute of repose precludes a plaintiff's claim is a question of law. See Hall v.Insurance Co. of North America, 727 A.2d 667, 669-670 (R.I. 1999). However, before making a final ruling on a motion for summary judgment based on a statute of repose, a motion justice may first need to find certain preliminary facts. Roe v. Gelineau 794 A.2d 476, 481 (R.I. 2002) (citing Hall, 727 A.2d at 669-70 (R.I. 1999)). Accordingly, in determining the application of a statute of repose, courts may employ a two-step procedure. See Hall, 727 A.2d at 669.
This Court will employ the two-step procedure for the statute of repose here at issue. Section 9-1-29 contains numerous elements which must be satisfied before its proper application. Prior to making any final ruling on the motion for summary judgment, this Court must, as a preliminary factual matter, determine whether the defendants have satisfied a threshold burden on these elements.
 Section 9-1-29
Section 9-1-29 provides, in full:
 "No action (including arbitration proceedings) in tort to recover damages shall be brought against any architect or professional engineer who designed, planned, or supervised to any extent the construction of improvements to real property, or against any contractor or subcontractor who constructed the improvements to real property, or material suppliers who furnished materials for the construction of the improvements, on account of any deficiency in the design, planning, supervision, or observation of construction or construction of any such improvements or in the materials furnished for the improvements:
 (1) For injury to property, real or personal, arising out of any such deficiency;
 (2) For injury to the person or for wrongful death arising out of any such deficiency; or
 (3) For contribution or indemnity for damages sustained on account of any injury mentioned in subdivisions (1) and (2) hereof more than ten (10) years after substantial completion of such an improvement; provided, however, that this shall not be construed to extend the time in which actions may otherwise be brought under §§ 9-1-13 and 9-1-14."
It is undisputed that § 9-1-29 is a statute of repose. See Allbee v.Crane Co., 644 A.2d 308 (R.I. 1994) (order). The purpose of the statute of repose in § 9-1-29 is well-settled. In enacting § 9-1-29, the General Assembly required that individuals seeking recovery in tort against constructors of improvements to real property bring an action within ten years of the substantial completion of the improvement.Qualitex, Inc. v. Coventry Realty Corp., 557 A.2d 850, 852 (R.I. 1989). The Legislature enacted this statute of repose in response to the extinction of the doctrine of privity. Walsh v. Gowing, 494 A.2d 543, 546 (R.I. 1985). With the abrogation of this doctrine, architects, engineers, and others ceased to enjoy immunity from liability to third parties. Id. (citing Temple Sinai-Suburban Reform Temple v. Richmond,112 R.I. 234, 308 A.2d 508 (1973)) (emphasis added). Therefore, the General Assembly attempted to shield "architects, professional engineers, contractors, subcontractors, and materialmen" and to provide them with a reasonable limitation on their greatly expanded potential liability. Qualitex, 557 A.2d at 852 (1989) (citing Walsh v. Gowing, 494 A.2d at 546) (emphasis added).
In Qualitex, the court considered whether a fire-sprinkler system is an improvement to real property for the purposes of § 9-1-29 and whether the statute shielded the manufacturer of the system, including fire-sprinkler heads as component parts, from liability. 557 A.2d at 852-53. After finding that the fire-sprinkler system was "within the `improvement to real property' language of the statute," the Qualitex
Court then determined that "manufacturers, just like architects, engineers, contractors, and subcontractors, need protection from individuals whose negligence in maintaining an improvement to real property may cause liability." Id. at 853 (citing J. H. Westerman Co. v.Fireman's Fund Insurance Co., 499 A.2d 116, 121 (D.C. App. 1985)). Consequently, the Court found that the defendant who "designed, manufactured, inspected and installed" the system was a "materialman," a term the Court defined as one who "`furnishes materials or supplies used in construction or repair of a building [or] structure.'" Id. at 853 (quoting Black's Law Dictionary 881 (West 5th ed. 1979)). Accordingly, the Qualitex Court held that the defendant, in its role as materialman, was entitled to the protection of § 9-1-29.
Using the Qualitex analysis, the Superior Court, Silverstein, J., found that § 9-1-29 did not apply in the lead-paint cases. State v. LeadIndus. Ass'n, C.A. No. 99-5226, 2001 R.I. Super. LEXIS 37 (April 2, 2001). Specifically, Judge Silverstein concluded that the statute "is not calculated to include lead, an ingredient in paint, as within the `improvement to real property' language." Id. at page 40. An "improvement" is "a valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes."Id. (quoting Black's Law Dictionary, page 757 (West 6th ed. 1990)); seealso Desnoyers v. Rhode Island Elevator Co., 571 A.2d 568, 570 (R.I. 1990). Therefore, the judge ruled that the protection of the statute did not extend to manufacturers of ingredients in paint such as lead.
Likewise, courts in Florida, Texas, North Carolina, North Dakota, and Minnesota have refused to apply statutes of repose[1] to asbestos-related actions. See Owens-Corning Fiberglas Corp. v. Rivera,683 So.2d 154 (Fla.App. Ct., 3rd Dist. 1996) (holding that the statute of repose did not bar the liability of an asbestos manufacturer in an action brought by the personal representative of a decedent exposed to the manufacturer's product); Stillson v. Peterson Hede Co., 454 N.W.2d 430
(Minn. 1990) (a three-year limitation for silicosis and asbestosis in the 1967 statute of repose does not bar workers' compensation claims related to disability resulting from lung cancer); Forsyth Memorial Hosp. v.Armstrong World Indus., 444 S.E.2d 423 (N.C. 1994) (no statute of repose applied to hospital-owners' claims of fraud and willful or wanton misconduct against a materialman based on an exemption in the statute of repose governing claims of defective improvements of real property);Blikre v. A C and S, Inc., 593 N.W.2d 775 (N.D. 1999) (a ten-year statute of limitations period was inapplicable where plaintiff's allegations centered on the manufacture, sale, and distribution of asbestos-containing products by defendants); White v. CBS Corp.,996 S.W.2d 920 (Tex.App.-Ct. 1999) (suit for negligence, strict liability, and conspiracy, after appellant's husband contracted cancer, allegedly from asbestos caused by appellee's turbines, was not barred by statute of repose); but see Gilcrease v. Tesoro Petroleum Corp., No. 04-00-00699-CV, 2001 Tex. App. LEXIS 8521 (Tex.App.-Ct. 2001) (worker's asbestos claims were governed by Alaska's 10-year statute of repose and fell within its effective date and outside claimed exceptions); see also
Jay M. Zitter, J.D., Validity and Construction of Statute TerminatingRight of Action for Product-Caused Injury at Fixed Period afterManufacture, Sale, or Delivery of Product, 30 A.L.R.5th 1 (2001).
However, courts in Illinois, California, Kentucky, Massachusetts, Michigan, Nebraska, Tennessee, and Oklahoma have dismissed asbestos-injury actions based on statutes of repose. See Schultz v KeeneCorp., 729 F. Supp. 609 (N.D.Ill. 1990) (applying Ill. Law) (summary judgment granted in favor of the defendants in an asbestos action based on a 12-year product liability statute of repose); Olson v. Owens-CorningFiberglas Corp., 556 N.E.2d 716 (Ill.App. 1990) (the product liability statute of repose applies to asbestos-related injuries); Hobby v.Johns-Manville Sales Corp., 573 F. Supp. 53 (S.D.Ill. 1983); Giest v.Sequoia Ventures, Inc., 83 Cal.App.4th 300, 99 Cal.Rptr.2d 476 (Cal.App. Ct., 1st Dist 2000) (asbestos wrongful death action against general contractor was barred by Montana 10-year statute of repose upon application of borrowing statute); William A. Pope Co. v. Howard,851 S.W.2d 460 (Ky. 1993) (the claimant's application for benefits relating to asbestos poisoning was properly dismissed where the claimant failed to file an application within five years of his last exposure);Commonwealth v. Owens-Corning Fiberglas Corp., 650 N.E.2d 365 (Mass. App. Ct. 1995) (Massachusetts' Asbestos Revival Statute did revive claims against installers of asbestos that would otherwise be time-barred by the statutory six-year statute of repose); Pendzsu v. Beazer East, Inc.,557 N.W.2d 127, (Mich. App. Ct. 1996) (statute of repose barred asbestos related injury claims where the work performed by companies constituted an improvement under the statute); Givens v. Anchor Packing, Inc.,466 N.W.2d 771 (Neb. 1991) (an amendment to a statute, dealing with injuries resulting from exposure to asbestos products, did not apply retroactively to resurrect the individual's action when a prior version of the statute had extinguished the action); Ball v. HarnischfegerCorp., 877 P.2d 45 (Okla. 1994) (although mere manufacturers and suppliers of mass-produced products enjoy no protection, Oklahoma's statute of repose applies to tort suits if a manufacturer were acting as a designer, planner, construction supervisor or observer, or constructor); Walls v. A C and S, Inc., 03A01-9707-CV-00269, 1998 Tenn. App. LEXIS 456 (Tenn.App. Ct. 1998) (a widow's claim that her spouse contracted stomach cancer from occupational exposure to asbestos products was barred by the applicable statute of repose); Bowman v. A-Best Co.,960 S.W.2d 594 (Tenn.App. Ct. 1997) (where a cause of action against a manufacturer of asbestos-containing products had not accrued, the statute of repose contained in the Tennessee Products Liability Act had the effect of barring such cause of action); Wyatt v. A-Best Prods. Co.,924 S.W.2d 98 (Tenn.App. Ct. 1995) (summary judgment was properly granted to manufacturers who had not distributed asbestos products within 10 years prior to enactment of Tennessee Products Liability Act establishing a 10-year statute of repose); see also Zitter, supra.
There is little doubt that Rhode Island, generally, stands with the states that apply statutes of repose to cases involving asbestos-related injuries. The language of § 9-1-29 is broadly written, and it is clear that the Legislature intended a broad application. Qualitex, 557 A.2d at 853. After considering the issue several times, our Supreme Court has never ruled that a construction-related activity for which a party sought the protection of § 9-1-29 did not constitute an improvement.[2] Moreover, the Qualitex Court ruled that because the statute does not expressly exclude manufacturers or any particular class from its operation, the statute must be read to include installers, manufacturers, and materialmen who, like the defendant therein, manufactured the component parts and installed the improvement. See id.
Nonetheless, as a matter of fact, in the instant case of Shauan v.ABB, Inc., et al, C.A. No. 01-4147, Defendants Dresser and Halliburton failed to make a threshold demonstration regarding the "construction of an improvement" to trigger the application of § 9-1-29 at the summary judgment stage. Dresser and Halliburton's argument was undermined by the facts as presented in its own Supporting Memorandum. Despite the definition of an "improvement" as something more than "mere repairs or replacement," Dresser and Halliburton repeatedly use those terms to describe the decedent's activities. Examples of these references include: "[Decedent] claims that he replaced gaskets in order to repair
air leaks in the pump flanges." (Memo. at 1) (emphasis added); and "Assuming . . . that the Plaintiff was exposed to asbestoscontaining materials while servicing pumps . . ., the Plaintiff's claim is barred by the Rhode Island statute of Repose." (Id. at 2.) (Emphasis added.)
Dresser and Halliburton essentially claim that, according to our Supreme Court, all pumps are to be considered improvements. See Allbee,
644 A.2d 308. Indeed, in Albee, the Court upheld summary judgment in favor of the defendants based on the statute of repose when the decedent's fatal injury was caused by a part of a vertical turbine pump seventeen years after the pump's installation. However, the Allbee Court did not conclude, and the reasoning does not follow, that all pumps, or all activities related to pumps, must be considered construction of improvements to real property. Particularly, according to Allbee, "theinstallation of the pump constituted an improvement to real property within the meaning of § 9-1-29." 644 A.2d at 308 (emphasis added). This language was not incidental to the Allbee opinion, as the installation satisfied the statutory element requiring the construction
of an improvement.
In Shauan, Dresser and Halliburton simply do not allege sufficient facts on the issue of construction in order to analogize its case toAllbee. Dresser and Halliburton contend that the decedent suffered his injury during the maintenance of an already installed pump. In order to accept Dresser and Halliburton's analogy to Allbee, it is necessary to categorize all repairs of an improvement as construction. However, this interpretation of § 9-1-29 would greatly expand its application, essentially eliminating causes of action for negligent repair and strict liability for any products later attached to ten-year-old improvements already existing on real property. Certainly, not all maintenance can be considered construction — e.g. changing an ordinary 60 Watt light bulb at eye level.[3] Although the decedent's deposition testimony may have sufficiently described the large proportions of the pump-in-question to qualify its installation as an improvement as a matter of law, the record is silent as to what it took for the decedent to service it. In the absence of such a description, this Court cannot conclude, as a matter of fact, that the decedent's maintenance activities constituted the construction of an improvement.
Dresser and Halliburton argue that because the definition of the term materialman used in Qualitex includes the phrase "construction orrepair," they are entitled to the liability shield of § 9-1-29 as materialmen. (Memo. at 4.) (Emphasis in original.) However, the phrase "materialman" does not appear in § 9-1-29 itself, but was added by judicial interpretation. In Qualitex, the defendant, as a materialman, received the protection of § 9-1-29 because it supplied products for the construction of an improvement. The Qualitex opinion cannot be read to forego the specific, mandatory statutory language requiring the "construction" of an improvement. Thus, although the definition of "materialman" may include a supplier of goods used in construction or repair, the statute-at-issue serves to limit liability in the former circumstance only.
After hearing argument and considering the materials submitted to this Court in Shauan v. ABB, Inc., et al, C.A. No. 01-4147, this Court finds that Defendants Dresser and Halliburton have not met the threshold summary judgment burden of demonstrating an absence of disputed issues of fact relating to their status as suppliers of materials used in the construction of improvements to real property. Consequently, this Court cannot conclude that Defendants Dresser and Halliburton have met the elements necessary to trigger the statute of repose as a matter of law. Thus, this Court need not advance to the second-step of the application process or address the constitutional issues raised therein. Dresser and Halliburton's consolidated motion for summary judgment must be, and is, denied.
Conversely, in Muliero v. A C and S, Inc., et al., 99-2703, Defendant ERCO successfully sustained its factual burden with respect to the "construction of an improvement" language of § 9-1-29. By definition, a rigger is charged with the movement of substantial heavy equipment, including boilers, turbines, generators, and other machinery. (Muliero Memo. at 2.) Some of the industrial equipment the decedent assisted in installing was so large, it was moved in several separate pieces. (See id. at 3, and Douglas Lamb 8/25/00 Depo. at 55-57.) Moreover, the record evidence and the Plaintiff's Memorandum are replete with characterizations of the activities the decedent undertook, establishing the construction element of the statute. For example, as stated by the Plaintiff,
 "[i]t must be emphasized that the [decedent's] exposure to asbestos arises from ERCO's use of asbestos containing insulation and refractory material during the installation of boilers and insulation of associated piping . . . . The [decedent's exposure does not arise from the removal or rip out [sic] of asbestos containing products previously installed by ERCO. Mr. Muliero's exposure occurred prior to and during the installation and application by ERCO's employees of asbestos containing products." (Id.)
Plaintiff argues that ERCO's products are not improvements to real property within the meaning of § 9-1-29. According to the Plaintiff, her circumstances are distinguishable from those of all of the previous Supreme Court opinions on this issue because her decedent was injured by a pre-installation product, whereas all previous Supreme Court opinions considered injuries resulting from "post-construction failures or hazards that occurred well after work was completed." (Muliero Memo. at 8.) Thus, the Plaintiff claims that "the use of asbestos containing products during the construction or repairs of boilers and piping is not an improvement to real property." Id. at 10. Moreover, the Plaintiff asserts that a triable issue of fact exists as to whether the Plaintiff and the Defendant were simultaneously present during the installation process at job sites. Also, the Plaintiff further warns that "dire consequences" would result from a contrary ruling in that 1) all defendant manufacturers of asbestos products that were affixed in any way to real property would be immune from suit; and 2) an absurd result would follow because a manufacturer's liability would rest entirely on chance, as the arbitrary effect of placement would determine the consequence (e.g., the same gaskets from the same manufacturer would yield differing liability based on whether they were used in car engines or attached to boilers in houses). Id. at 16.
However, Plaintiff's proposed construction of the statute narrows its broad language, as well as the Supreme Court's broad interpretation and application. See Qualitex, 557 A.2d at 853. The instant case bears a striking resemblance to the circumstances in Qualitex. The Qualitex Court concluded that the defendant who allegedly "designed, manufactured, inspected and installed" the fire-sprinkler system, including the component parts, as manufacturer, installer and supplier, was a "materialman" entitled to the protection of the statute. Qualitex, 557 A.2d at 853 (quoting Black's Law Dictionary 881 (West 5th ed. 1979)). Here, the Plaintiff makes much of the distinction between pre-construction mass-produced products, such as the asbestos insulation products used by Defendant ERCO while installing industrial equipment, and post construction structures. However, the Qualitex Court made no such distinction and specifically included both manufacturers and installers within the scope of the phrase, "material suppliers," as used in the statute. Contrary to Plaintiff's argument, the Rhode Island Supreme Court seems to find the result-driven consequence of "attachment to real property" as determinative of the issue of immunity from liability. Therefore, the Qualitex Court concluded that the defendant was entitled to the protection of the statute as a materialman.
Likewise, the same interpretation should be applicable in the present case. The Supreme Court, both in word and deed, has consistently ruled that "there seems no reason not to read . . . [§ 9-1-29] as applicable to all those specified in the statute, whether they build houses, commercial buildings, parking structures, bridges, or anythingthat can reasonably be defined as an improvement to real estate." Walsh,
494 A.2d at 546 (emphasis added). The record establishes that the Defendant and decedent were not involved in the "mere repairs or replacement" of items, as excluded from the definition of "improvement" previously stated. (See generally Muliero Memo. at pages 2-3.) Because ERCO's participation in the installation of heavy industrial equipment, as described by the Plaintiff, can also reasonably be considered improvements to real property, the activities, and the people who worked on these projects up to the point of substantial completion,[4] are subject to statutory immunity from liability. Any perceived unfairness is better addressed to the Legislature.
Further, contrary to the Plaintiff's argument, nothing in the statute or in any case interpreting the statute suggests that a defendant must show simultaneous presence at the job site in order to enjoy immunity from liability. In fact, § 9-1-29 clearly contemplates several different parties — designers, suppliers, contractors, and subcontractors — working together on a construction project. Necessarily, with different parties come distinct phases of a project during which these individuals perform their necessary tasks in some sort of logical fashion. Consequently, requiring the concurrent presence each party on a construction site is simply not a reasonable interpretation of the statute.[5] Therefore, a determination of simultaneous presence is not material for the purpose of determining the applicability of the statute.
Because this Court finds that ERCO sufficiently demonstrated its entitlement to the protection of § 9-1-29, this Court must address whether the statute can be constitutionally applied to the present case.See Walsh v. Gowing, 494 A.2d 543 (R.I. 1985). In Walsh, the plaintiff asserted that § 9-1-29 violated article 1, section 5 of the Rhode Island Constitution. Prior to the Court's decision in Walsh, the Court had struck down as unconstitutional the products-liability statute of repose, § 9-1-13(b). See Kennedy v. Cumberland Engineering Co.,471 A.2d 195 (R.I. 1984). However, in sustaining the constitutional validity of § 9-1-29, generally, the Walsh Court distinguished theKennedy opinion based on the differing purposes and effects of the two statutes of repose. The Kennedy Court held that § 9-1-13(b)[6]
completely denied "products-liability claimants of their day in court, notwithstanding the merits of their claims and the direct liability of the potential defendants." Walsh, 494 A.2d at 547 (quoting Kennedy, 471 A.2d at 199). It was this total denial of access to the courts that violated the constitutional guarantee of a remedy for every wrong found in article 1, section 5. Conversely, the Walsh Court held that § 9-1-29
did not violate article 1, section 5 in that case because the plaintiff seeking damages could resort to the courts for redress of injuries arising out of improvements to real property against the owners or operators of that improved property. Walsh, 494 A.2d at 548.
In the present case, Plaintiff argues that because the decedent was injured during construction, he cannot maintain an action against a landowner or operator for negligently maintaining the property, as inWalsh. The Plaintiff states:
 "In all probability, Mr. Muliero's only remedy is against the manufacturers, distributors and suppliers of the asbestos-containing products to which he was exposed . . . . The application of § 9-1-29 to this case would completely bar the Mulieros from successfully bringing an action against any defendant for Mr. Muliero's injuries, and would thus violate Article I, § 5 of [the] Rhode Island Constitution." (Muliero Memo. at 18 (emphasis original).)
ERCO argues that the Plaintiff is "not precluded from bringing suit against landowners/operators of the work sites where the exposure allegedly occurred." (ERCO Reply Memo. at 6.) However, ERCO fails to specify to this Court a theory upon which such liability could rest. Indeed, as argued by the Plaintiff, it is unlikely that an owner or operator would owe a duty to an agent of an independent contractor under the circumstances of this case.
Nonetheless, there is a potential defendant, conspicuously absent from this action, that the Plaintiff did not discuss — decedent's employer, Lamb Brothers. Conceivably, Lamb Brothers may be liable under statutes regulating workplace safety not barred by the statute of repose. See, e.g., R.I. Gen. Laws §§ 23-1.1-1 et seq. For instance, it is not clear whether the Plaintiff pursued a workers' compensation claim. Such a claim would not sound in tort, and therefore, would not be barred by the statute. If the Plaintiff or decedent sought redress in that court, then he or she was not left without a remedy. If the Plaintiff or decedent declined or was otherwise ineligible for a workers' compensation remedy, then this constitutes a pleading omission that cannot be held against ERCO. In either circumstance, the absence of Lamb Brothers as a named party in the case-at-hand militates against the Plaintiff's argument regarding the absence of a defendant potentially liable and not barred by the statute of repose.
This Court also notes that of the more than 20 named defendants in this case, the Plaintiff has already settled with at least three: J H France, Allied Signal, and Dillon Boiler. Thus, in this litigation, the Plaintiff did have potentially liable defendants that she, herself excused. "An injured party always assumes the risk that a jury or the court will assign a lesser measure of liability to the remaining alleged tortfeasors than he or she had forecast." Merrill v. Trenn, 706 A.2d 1305, 1311 n. 19 (R.I. 1998). Such a miscalculation burdens only the injured party and does not negatively affect the earlier-settling or nonsettling allegedtortfeasors. Id. (Emphasis added.)
For all of the foregoing reasons, this Court finds that ERCO enjoys the protection of the statute of repose, § 9-1-29. Factually, ERCO sufficiently demonstrated that it provided products and services attendant to the construction of improvements to real property, as defined by the statute and interpreted by our Supreme Court. Moreover, as applied to the present case, § 9-1-29 does not violate article 1, section 5 of the Rhode Island Constitution. Consequently, no issues of disputed material fact remain, and ERCO is entitled to application of the statute as a matter of law.
 Conclusion 
After a review of the records in each case:
Summary judgment is denied to Defendants Dresser and Halliburton inShauan v. ABB, Inc., et al, C.A. No. 01-4147 because the Defendants failed, as a threshold issue of fact, to demonstrate that the materials they provided were used in the construction of improvements to real property;
Summary judgment is granted to Defendant ERCO in Muliero v. A C and S,Inc., et al., 99-2703 because ERCO successfully established that the materials it supplied and the contract installation it provided constituted improvements to real property so as to trigger the application of the statute of repose, § 9-1-29. Further, the application of the statute in that case did not violate article 1, section 5 of the Rhode Island Constitution.
Counsel shall submit an order for entry in each case.
[1] Some of these statutes of repose relate to strict products liability as opposed to construction liability. However, even though the subject matter and the language of the statutes vary between the states, the reasoning of the cases interpreting them illuminates the narrow distinctions that other courts have drawn on asbestos-related issues.
[2] In the following cases, the Rhode Island Supreme Court found that the activities constituted improvements to real property: Allbee v. CraneCo., 644 A.2d 308 (R.I. 1994) (a vertical turbine pump), Qualitex,supra, (a fire sprinkler system), Leeper v. Hillier Group, ArchitectsPlanners, PA, 543 A.2d 258 (R.I. 1988) (a college dormitory), and Walshv. Gowing, supra (the Newport Bridge).
[3] Some repairs, in and of themselves, may constitute the construction of an improvement. However, in order to establish that fact, pursuant to the definition of "improvement," the defendant must demonstrate that the repairs were costly, laborious, or time consuming. A non-exhaustive list of other factors that might assist this Court in its determinations include the frequency or regularity of the maintenance, business disruption caused by any shut-down of machinery, whether in-house personnel could perform the repairs or whether outside help was needed, whether repairs had to be performed on-site, the scarcity or abundance of replacement parts, and whether the company considered the repairs an expense or an expenditure for tax purposes, just to name a few.
[4] In order to apply the statute, a party must show the running of a ten-year time period from a substantial completion date. Here, it is clear from the record that the last possible time that the decedent inMuliero could have been exposed was in the mid-1980's. (See Complaint at ¶ 4, and ERCO Memo. at 3.) The Muliero Plaintiff has not challenged the ten-year time period.
[5] The statute itself bars all suits in tort resulting from the construction of an improvement. Thus, even if a person not involved in the construction process is exposed by activities attendant to the construction, § 9-1-29 would apply. This is not to say that a product with prospective involvement in the construction of an improvement would be subject to the operation of the statute — e.g. a warehouse worker or a delivery-truck driver. Said issue is specifically left open for another day. However, it is sufficient to note that in the present case, the decedent's exposure occurred during the course of his involvement with the construction of the improvements.
[6] Section 9-1-13(b) abrogated the right to all civil products-liability actions not brought within ten years of the date the product was purchased. This legislation eliminated any potential actions that the plaintiff had against possible defendants, either under a strict-liability/products-liability theory or a traditional negligence theory. See Ritter v. The Narragansett Electric Co., 109 R.I. 176,283 A.2d 255 (1971) (products-liability action is not exclusive; recovery for negligence also available).