STATE

v.

**Rudy SIFUENTES.**

No. 93–269–C.A.

Supreme Court of Rhode Island.

Nov. 4, 1994.

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen., for plaintiff.

Richard Casparian, Public Defender, Janice Weisfeld and Paula Rosin, Asst. Public Defenders, for defendant.

## OPINION

SHEA, Justice.

This matter came before the Supreme Court on the appeal of Rudy Sifuentes (defendant), from a Superior Court jury conviction of first-degree murder. For the following reasons we affirm.

The facts pertinent to this appeal are as follows. On May 23, 1990, the Providence police found the brutally slashed body of Kevin Greenhalgh (decedent), near the William D'Abate School in Providence. The police found, lying next to the body, a knife with a broken handle. The following day an autopsy was performed establishing the cause of death of the decedent to have been a loss of blood that was due primarily to a wound in the neck. On July 6, 1990, indictment No. P1/90–2485B charged defendant and Donald Brown (Brown) with the murder of the decedent. The indictment also charged Michael Stone (Stone) with aiding and abetting in the commission of the murder of the decedent. The defendant stood trial without Brown and Stone, and on April 3, 1992, a Providence Superior Court jury found defendant guilty of first-degree murder in a manner involving torture and aggravated battery. The trial justice subsequently denied defendant's motion for a new trial, and on June 26, 1992, defendant was sentenced to life in prison without the possibility of parole. The defendant filed a timely notice of appeal.

The facts elicited at trial were as follows. During the interval of approximately three to four weeks prior to the decedent's murder, defendant had been staying in an apartment at 201 Manton Avenue in Providence with Stone, Stone's girlfriend Deena Marsden (Marsden), and her two children. Stone testified that defendant, Brown, and decedent were drinking at a party in Stone's apartment on May 22, 1990. During the party, when defendant and Stone were alone in the bathroom, defendant asked Stone for a knife. The defendant told Stone that the decedent had snitched on Brown in prison and that he was going "to * * * him up." Stone acknowledged that he gave the knife to defendant and that approximately fifteen minutes later, Brown, defendant, and decedent left Stone's apartment. Stone testified that defendant later returned to his apartment between midnight and one o'clock, telling him that he and Brown "had just * * * the snitch up real bad with the knife," and that he "didn't believe the guy would be snitching on anybody again."

At trial Stone testified that he recognized the knife found at the murder scene as the same one that he gave defendant on May 22, 1990. Stone's girlfriend, Marsden, also testified that the knife found at the scene of the murder belonged to her and had come from her kitchen pantry.

Brown's girlfriend, Pauline Lotz, also testified that she saw defendant and Brown covered in blood in her apartment on the evening of May 22, 1990.

Brown, who pled guilty to murder in the first degree and was sentenced to life imprisonment on February 26, 1992, was called as a witness but refused to testify after being asked whether he knew defendant.

The first issue presented by defendant is whether the trial justice erred in refusing to permit defense counsel to inquire whether witness Stone was aware of the penalty for first-degree child molestation. The defendant contends that the state's witness, Stone, had been charged with first-degree child molestation of his daughter and that his testimony had been procured with his subjective belief that his sentence would be reduced if he would testify in the case at bar. The trial justice sustained the state's objection to the defense counsel's question to Stone, "Are you aware what the penalty, potential penalty in a case like that [first-degree child molestation] is ?" The defendant asserts that this question was proper to expose the lengths that Stone might go to in order to gain favor with the government in his pending child-molestation case.

■■■ This court acknowledges that the Sixth Amendment to the United States Constitution and article 1, section 10, of the Rhode Island Constitution guarantee a de-fendant's right to an effective cross-examination in all criminal matters. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *State v. Myers,* 115 R.I. 583, 350 A.2d 611 (1976). This court, however, has also recognized that the scope of cross-examination is subject to the trial justice's sound discretion. *State v. O'Brien,* 122 R.I. 749, 412 A.2d 231 (1980). The discretionary authority to limit cross-examination comes into play only after sufficient cross-examination to satisfy the Sixth Amendment has been permitted as a matter of right. *State v. DeBarros,* 441 A.2d 549 (R.I.1982).

■■■ To determine if an effective cross-examination has been allowed in circumstances similar to the case at bar, the court looks at whether the defendant was provided an adequate opportunity to bring out considerations relevant to motive or bias. *State v. Anthony,* 422 A.2d 921, 924 (R.I.1980). The record indicates that Stone was cross-examined concerning his agreement to testify against defendant in exchange for preferential treatment with the state in regard to his involvement with the murder of the decedent.[1]

The defendant had ample opportunity to cross-examine Stone. It was clear that

---

1. The transcript reads in part:

"Q. The agreement was also that the indictment against you would be reduced: isn't that correct?
"A. Yes it is.
"Q. From aiding and abetting murder to aiding and abetting in an assault with a dangerous weapon.
"A. Yes.
"* * *
"Q. And as a result of your admitting, implicating yourself and others, you were sentenced to twenty years at the adult correctional institution, but that sentence was suspended, and you were placed on probation for twenty years; is that correct?
"A. Yes, it is.
"Q. And if you were considered to be a violator of the terms of that probation, you could go to jail for up to twenty years; is that correct?
"A. Yes, it is.
"* * *
"Q. When you entered the agreement * * * did you have any cases pending or knocking around the system of any consequence?
"A. Yes I did.
"Q. You had two, didn't you?
"A. Yes.

"Q. The first was possession of stolen motor vehicles, that was allegedly committed on June 11, 1991; isn't that correct?
"A. Yes.
"* * *
"Q. You [also] had an indictment pending * * * which alleges that on the 26th of July 1991 you committed a crime of first degree child molestation; isn't that correct?
"A. Yes it is.
"* * *
"Q. And did you ask your lawyer to ask the attorney general if you could get some consideration on that case?
"A. Yes, I did.
"Q. Do you hope that if your testimony here is satisfactory you are going to get some consideration in that case?
"A. I was already told it would not be.
"Q. Do you hope it will?
"A. No.
"Q. You don't?
"A. No.
"Q. Are you aware what the penalty, potential penalty in a case like that is?
"Mr. Bristow: Judge I object.
"The Court: That will be sustained."

Stone had entered into an agreement with the state and that his motive was explored in detail. The trial justice permitted cross-examination to show that Stone had been indicted for the felony of child molestation, sexual assault in the first degree. When considering the evidentiary value of the question asked by counsel for defendant, the trial justice stated in part:

> "I am satisfied that it does not advance [the] jury's ability to assess the desire of the defendant to curry favor with the State to know what the statutory penalty for a felony on which the witness indicted may be * * *. So that being the case that knowledge is not relevant to this line of inquiry, and to the extent it is, it is so highly prejudicial that I will not allow it. Nor will I allow inquiry as to what sentence the witness might expect to have, in fact imposed on him if he is found guilty after the trial."

There is no merit in defendant's argument. This court concurs with the trial justice that defendant was afforded an adequate opportunity to cross-examine Stone.

The defendant also asserts that the trial justice erred by permitting Brown to be called as a witness before the jury when it was apparent that he would refuse to testify. He also alleges error in the denial of a resulting motion to pass the case. The defendant cites *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151, 10 L.Ed.2d 278 (1963), for the proposition that it constitutes prejudicial error to the defendant when in the circumstances of a particular case, inferences from a witness's refusal to answer add "critical weight to the prosecution's case in a form not subject to cross-examination." *Id.* at 187, 83 S.Ct. at 1155, 10 L.Ed.2d at 284.

In the case at bar Brown, who had previously pled guilty to first-degree murder of the decedent, was called to the stand by the prosecution and asked, "Do you know a man named Rudy Sifuentes [defendant]?" The witness refused to answer and was subsequently removed from the stand. The defendant failed to preserve this issue on appeal because he did not object to the prosecution's calling Brown as a witness. Nevertheless, the court is of the opinion that defendant's argument that Brown's silence constituted "critical weight" to the prosecution's case is meritless. We agree with the trial justice's determination that the physical and testimonial evidence against the defendant presented during trial was overwhelming. The single question asked of the witness was not prejudicial. The defendant's motion to pass was properly denied.

For the foregoing reasons the defendant's appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.