**STATE**

v.

**Rudy SIFUENTES.**

**No. 2009–75–M.P.**

Supreme Court of Rhode Island.

June 10, 2010.

123 U. Pa. L.Rev. 1267, 1280–81 (1975).

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

Susan B. Iannitelli, Esq., for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The petitioner, Rudy Sifuentes, having previously been convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole, has petitioned this Court for a writ of certiorari. Citing the provisions of G.L.1956 § 12–19.2–5, Mr. Sifuentes requests that this Court (1) undertake a review of his sentence of life imprisonment without the possibility of parole and (2) modify his sentence so as to allow for the possibility of parole.

Although this Court is of the view that Mr. Sifuentes has waived his right to have this Court engage in such a statutorily authorized review due to the fact that he did not seek review under § 12–19.2–5 in either of his two earlier appeals to this Court or in his more recent application for postconviction relief, we have nonetheless opted to undertake a review of his sentence of life imprisonment without the possibility of parole. For the reasons set forth in this opinion, we have concluded that petitioner's sentence of life imprisonment without the possibility of parole was entirely appropriate and should be ratified by us.

## I

### Facts and Travel

#### A

#### The Factual Background

The factual background of this case has been described at length in two previous decisions of this Court—*viz., State v. Sifuentes,* 649 A.2d 500 (R.I.1994) (*Sifuentes I*) and *State v. Sifuentes,* 667 A.2d 791 (R.I.1995) (*Sifuentes II*). For the sake of brevity, in this opinion we shall summarize only the facts relevant to the instant case.

On May 23, 1990, the Providence police discovered the body of Kevin Greenhalgh, which was described as having been "brutally slashed." *Sifuentes I*, 649 A.2d at 501. The medical examiner found that Mr. Greenhalgh's death was the result of "loss of blood that was due primarily to a wound in the neck." *Id.* In July of 1990, Mr. Sifuentes and one Donald Brown were both charged with the murder of Mr. Greenhalgh. *Id.* Testimony elicited at trial revealed that Mr. Sifuentes and Mr. Brown had come to believe that the victim had "snitched" on Mr. Brown in prison. *Id.* The testimony reflects that their belief was the motive for the murder. *See id.* From March 31 through April 3, 1992, Mr. Sifuentes was tried by a jury in the Providence County Superior Court. At the conclusion of the trial, the jury expressly found Mr. Sifuentes "guilty of first-degree murder in a manner involving torture and aggravated battery." *Id.* On June 26, 1992, the trial justice sentenced Mr. Sifuentes to life imprisonment without the possibility of parole. *Id.*

## B

### The Direct Appeal

Mr. Sifuentes appealed his conviction of first-degree murder to this Court. *Sifuentes I*, 649 A.2d at 501. In that direct appeal, Mr. Sifuentes raised two issues. *Id.* at 502–03. His first contention on appeal was that the trial justice erred in refusing to permit defense counsel to inquire, during his cross-examination of a prosecution witness, as to whether the witness was aware of the penalty associated with first-degree child molestation (a crime with which that witness was charged at that time). *Id.* at 502. His second contention on appeal was that the trial justice erred in permitting Mr. Brown (who had

previously pled guilty to first-degree murder with respect to the killing of Mr. Greenhalgh) to be called as a witness. *Id.* at 503. When called to testify, Mr. Brown refused to answer the question posed to him. *Id.* In its decision, this Court held that Mr. Sifuentes' first argument had "no merit;" the Court stated that Mr. Sifuentes was "afforded an adequate opportunity to cross-examine" the witness. *Id.* As to Mr. Sifuentes' second contention (concerning the testimony of Mr. Brown), the Court held that the issue had not been properly preserved; the Court added that, even if it had been properly preserved, Mr. Sifuentes' argument in that regard was "meritless." *Id.* The Court accordingly denied Mr. Sifuentes' appeal and affirmed the judgment of conviction of first-degree murder. *Id.*

## C

### The Appeal from the Denial of Petitioner's Rule 35 Motion

In 1995, Mr. Sifuentes again sought relief from this Court, this time appealing from the Superior Court's order denying his Rule 35[1] motion to reduce his sentence. *Sifuentes II*, 667 A.2d at 792. On appeal, he contended that the trial justice erred in declining to grant his motion to reduce his sentence to life imprisonment *with* the possibility of parole. *Id.* He contended that his sentence was "grossly disproportionate" to the sentence meted out to Mr. Brown, who had pled guilty to the same murder. *Id.*[2] Addressing these contentions, this Court stated that it was clear that "the trial justice was mindful of the barbaric, gruesome nature of the crime and was equally mindful that the defendant had failed to accept responsibility and [had failed] to express remorse for that

---

1. Rule 35 of the Superior Court Rules of Criminal Procedure.

2. Mr. Brown had been sentenced to life imprisonment *with* the possibility of parole.

crime." *Id.* The Court then held that Mr. Sifuentes had "failed to establish that the trial justice abused his discretion in denying the defendant's motion to reduce his sentence." *Id.* The Court accordingly affirmed the order denying the Rule 35 motion and denied and dismissed Mr. Sifuentes' appeal. *Id.*

## D

### The Denial of Petitioner's Postconviction Relief Application

Subsequent to this Court's decision with respect to his appeal from the denial of his Rule 35 motion, Mr. Sifuentes filed a *pro* *se* application for postconviction relief in the Superior Court pursuant to G.L.1956 § 10–9.1–1.[3] In that application, he alleged that his trial counsel had not provided him with effective assistance and that the trial court had committed several errors.[4] A hearing was held on August 1, 2006 with respect to his application; at the conclusion of that hearing, the hearing justice denied Mr. Sifuentes' application for postconviction relief.[5]

## E

### The Instant Petition for Certiorari

On February 10, 2009, Mr. Sifuentes filed a petition for a writ of certiorari, the

---

*State v. Sifuentes*, 649 A.2d 500, 502 (R.I. 1994) (*Sifuentes I*).

3. General Laws 1956 § 10–9.1–1 reads as follows:

"(a) Any person who has been convicted of, or sentenced for, a crime, a violation of law, or a violation of probationary or deferred sentence status and who claims:

"(1) That the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of this state;

"(2) That the court was without jurisdiction to impose sentence;

"(3) That the sentence exceeds the maximum authorized by law, or is otherwise not in accordance with the sentence authorized by law;

"(4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

"(5) That his or her sentence has expired, his or her probation, parole, or conditional release unlawfully revoked, or he or she is otherwise unlawfully held in custody or other restraint; or

"(6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

"may institute, without paying a filing fee, a proceeding under this chapter to secure relief.

"(b) This remedy is not a substitute for nor does it affect any remedy incident to the proceedings in the trial court, or of direct review of the sentence or conviction. Except as otherwise provided in this chapter, it comprehends and takes the place of all other common law, statutory, or other remedies heretofore available for challenging the validity of the conviction or sentence. It shall be used exclusively in place of them."

4. The postconviction relief hearing justice summarized the contentions in Mr. Sifuentes' postconviction relief application by stating that Mr. Sifuentes had alleged:

"that trial counsel provided ineffective assistance of counsel by not interviewing and calling witnesses on [Mr. Sifuentes'] behalf who would have provided exculpatory testimony of his diminished capacity; second, that the trial Court erred in not inquiring of [Mr. Sifuentes] on the record if he was waiving his right to testify; third, that the interrogation at the police department violated his constitutional rights; fourth, that trial counsel was ineffective in not presenting a defense of diminished capacity; and that, finally, * * * the trial Court erred in not allowing [Mr. Sifuentes'] codefendant's, Donald Brown's, statements to be given to the jury for their inspection."

5. Mr. Sifuentes has appealed from the denial of his application for postconviction relief, but that appeal has yet to come before this Court for review.

subject of which constitutes the matter presently before this Court. In his petition, Mr. Sifuentes has requested that this Court undertake a review of his sentence of life without the possibility of parole pursuant to § 12–19.2–5. In granting the petition for a writ of certiorari (over the objection of the state), this Court indicated that its review would be limited to two questions: (1) whether Mr. Sifuentes, "in light of his failure to raise the issue in prior appellate proceedings in this case, should be deemed to have waived his § 12–19.2–5 right to this Court's review of * * * his life-without-parole sentence;" and (2) "whether, if such right is deemed not to have been waived, the sentence of life imprisonment without the possibility of parole was appropriate in the circumstances of this case."

## II

## Analysis

### A

### Procedural Bar and Waiver

Section 12–19.2–5 provides a mechanism whereby a person sentenced to life imprisonment without the possibility of parole may have his or her sentence reviewed by this Court. That statute provides as follows:

"The defendant shall have the right to appeal a sentence of life imprisonment without parole to the [S]upreme [C]ourt of the state in accordance with the applicable rules of court. In considering an appeal of a sentence, the [C]ourt, after review of the transcript of the proceedings below, may, in its discretion, ratify the imposition of the sentence of life imprisonment without parole or may reduce the sentence to life imprisonment." *Id.*

Since the enactment in 1984 of the just-quoted statute concerning appeals from sentences of life imprisonment without the possibility of parole, there have been numerous defendants who, invoking said statute, have sought this Court's review of their sentences of life imprisonment without the possibility of parole. However, it is noteworthy that, in virtually all[6] of the previous cases decided by this Court in which a sentence of life imprisonment without the possibility of parole was challenged, the defendants have *raised in their direct appeal* their right to § 12–19.2–5 review by this Court.[7] The clear language of § 12–19.2–5 leads us ineluctably to the conclusion that, although one who has been sentenced to life without the possibility of parole has *the right* to a review by this Court of that sentence in the manner set forth in the statute, such review by no means occurs automatically; rather, the right to such review must be invoked by the defendant "in accordance with the applicable rules of [the Supreme Court]." Section 12–19.2–5.

Article I, Rule 16(a) of the Supreme Court Rules of Appellate Procedure reads, in pertinent part, as follows: "Errors not

---

6. The lone exception is *Page v. State,* 2010 WL 2099293 (R.I. May 26, 2010).

7. *See State v. Graham,* 941 A.2d 848 (R.I. 2008); *State v. McManus,* 941 A.2d 222 (R.I. 2008); *State v. Day,* 925 A.2d 962 (R.I.2007); *State v. Quinlan,* 921 A.2d 96 (R.I.2007); *State v. Brown,* 898 A.2d 69 (R.I.2006); *State v. Motyka,* 893 A.2d 267 (R.I.2006); *State v. Harnois,* 853 A.2d 1249 (R.I.2004); *State v. Edwards,* 810 A.2d 226 (R.I.2002); *State v.*

*Smith,* 766 A.2d 913 (R.I.2001); *State v. Pacheco,* 763 A.2d 971 (R.I.2001); *State v. Bustamante,* 756 A.2d 758 (R.I.2000); *State v. Tassone,* 749 A.2d 1112 (R.I.2000); *State v. Garcia,* 743 A.2d 1038 (R.I.2000); *State v. Washington,* 581 A.2d 1031 (R.I.1990); *State v. Wilson,* 568 A.2d 764 (R.I.1990); *State v. Travis,* 568 A.2d 316 (R.I.1990); *State v. Lassor,* 555 A.2d 339 (R.I.1989).

claimed, questions not raised and points not made ordinarily will be treated as waived and not be considered by the Court." *See Stebbins v. Wells,* 818 A.2d 711, 720 (R.I.2003) (stating that a party's failure "to brief a particular issue on appeal results in a waiver of that issue" and that the issue is considered waived "both for purposes of the appeal at issue, and throughout any future proceedings after the case is remanded"). We therefore conclude that, by not raising § 12–19.2–5 in his prior appeals to this Court,[8] he has waived his right to such review.[9]

### B

### Review of the Sentence of Life Imprisonment without the Possibility of Parole

#### 1. Applicable Statutes and the Trial Court's Sentence

■ In spite of our conclusion that Mr. Sifuentes has waived his right to a review of the sentence of life imprisonment without the possibility of parole pursuant to § 12–19.2–5, we have nonetheless chosen to undertake a review of his sentence. The sentence of life imprisonment without the possibility of parole is the harshest sentence that can be imposed in this state.[10] Taking into account the severity

of such a sentence and being mindful that we have no legal obligation to do so, we shall, in this case, disregard petitioner's waiver of his right to a § 12–19.2–5 review in either of his two previous appeals to this Court or in his recent application for postconviction relief.[11] At the same time, however, we decline to grant Mr. Sifuentes' request that this case be remanded to the Superior Court in order to "develop the record by obtaining a fresh presentence report and the institutional record." We further decline to grant his request that he be given "an opportunity to testify verbally or in writing as to his sense of remorse." Rather, we shall review the record as it existed before the trial justice, the only review to which Mr. Sifuentes was originally entitled.

■ When, acting pursuant to § 12–19.2–5, we review a trial justice's sentence of life imprisonment without the possibility of parole, we do so "in a *de novo* manner." *State v. Motyka,* 893 A.2d 267, 288 (R.I. 2006); *see also State v. Quinlan,* 921 A.2d 96, 112 (R.I.2007).

■ Under the provisions of G.L.1956 § 11–23–2, the "sentence of life imprisonment without the possibility of parole may be imposed in a first-degree murder case when one of seven enumerated grounds is

---

8. Mr. Sifuentes has also not alleged, in his recent application for postconviction relief, that his appellate counsel provided him with ineffective assistance of counsel by failing to raise his right to a review of his sentence of life imprisonment without the possibility of parole pursuant to G.L.1956 § 12–19.2–5 in his prior appeals. *See Page,* 2010 WL 2099293, at *5.

9. In addition to the just-described principle of waiver, in our judgment, the doctrine of *res judicata* similarly precludes Mr. Sifuentes from invoking review under § 12–19.2–5 at this late date, since Mr. Sifuentes did not invoke the provisions of § 12–19.2–5 in either *Sifuentes I* or *Sifuentes II. See Ferrell v. Wall,*

971 A.2d 615, 620 n. 2 (R.I.2009) (expressly recognizing that " 'waiver' and 'res judicata' are closely related jurisprudential concepts"). Both the doctrine of *res judicata* and waiver are instances of the law's concern for judicial economy.

10. This Court has stated that the sentence of life imprisonment without the possibility of parole is reserved for those who commit a "narrow class of the most heinous crimes." *Brown,* 898 A.2d at 86; *see also Graham,* 941 A.2d at 866–67.

11. *See* footnote 4, *supra,* and text accompanying same.

present." *Motyka*, 893 A.2d at 288; *see also State v. Pacheco*, 763 A.2d 971, 982 (R.I.2001) ("The penalties for murder listed in § 11–23–2 are enumerated in the alternative, thereby requiring that the jury find only one of seven conditions in order to trigger consideration of the 'not eligible for parole' provision.").[12]

In the instant case, the jury returned a verdict finding Mr. Sifuentes guilty of first-degree murder. After returning the verdict of guilty, the jury was called upon to determine whether the murder was committed in a manner which involved either torture or aggravated battery. *See* § 11–23–2(4). Upon further deliberation, the jury found that the murder was committed "[i]n a manner involving *both* torture and aggravated battery to Kevin Greenhalgh." (Emphasis added.)

Thereafter, the trial justice conducted a sentencing hearing, at which Mr. Greenhalgh's sister and his girlfriend addressed the court. His sister described Mr. Greenhalgh as "a son, a brother and a friend to many people." She further stated that those people who loved Mr. Greenhalgh "have also become [Mr. Sifuentes'] victims."

The trial justice was also read a letter from Mr. Sifuentes' mother, and his sister addressed the court. Mr. Sifuentes' mother and sister informed the court that Mr. Sifuentes had a "family that loves him" and that "[h]e also has a good heart, no matter what anyone says about him." They further contended that Mr. Sifuentes was "trying to be rehabilitated," and they asked the court to allow Mr. Sifuentes to one day "live his life."

In addition, the trial justice heard arguments from the prosecutor and from counsel for Mr. Sifuentes. When Mr. Sifuentes was asked by the trial justice whether he wished to address the court prior to the pronouncement of sentence, the entirety of Mr. Sifuentes' response was: "I don't know what to say. No, I guess not."

In imposing the sentence of life imprisonment without the possibility of parole in this case, the trial justice acknowledged the decedent's assistance to law enforcement and set forth his view that Mr. Greenhalgh had committed what the trial justice sardonically described as a "capital crime" by having "cooperated with law enforcement" and by having "informed on fellow prisoners." The trial justice went on to state that, for this "capital crime"

---

12. General Laws 1956 § 11–23–2 provides in pertinent part as follows:

"Every person guilty of murder in the first degree shall be imprisoned for life. Every person guilty of murder in the first degree: (1) committed intentionally while engaged in the commission of another capital offense or other felony for which life imprisonment may be imposed; (2) committed in a manner creating a great risk of death to more than one person by means of a weapon or device or substance which would normally be hazardous to the life of more than one person; (3) committed at the direction of another person in return for money or any other thing of monetary value from that person; (4) committed in a manner involving torture or an aggravated battery to the victim; (5) committed against any member of the judiciary, law enforcement officer, corrections employee, assistant attorney general or special assistant attorney general, or firefighter arising from the lawful performance of his or her official duties; (6) committed by a person who at the time of the murder was committed to confinement in the adult correctional institutions or the state reformatory for women upon conviction of a felony; or (7) committed during the course of the perpetration or attempted perpetration of felony manufacture, sale, delivery or other distribution of a controlled substance * * * shall be imprisoned for life and if ordered by the court pursuant to chapter 19.2 of title 12 that person shall not be eligible for parole from imprisonment."

Mr. Greenhalgh received a punishment where "death apparently was not enough." The trial justice stated that the "torture and aggravated assault, as demonstrated by the wounds on [Mr. Greenhalgh's] body and against his throat, speak of the barbarity of that hedonistic ascription." The trial justice further expressed his view that the manner in which Mr. Greenhalgh was killed was intended by Mr. Sifuentes and Mr. Brown to be a signal to other potential informants that they will not only be killed should they choose to inform, but also that they will "die in the torment that Kevin Greenhalgh did die."

The trial justice expressly found that, after having reviewed the presentence report and after having considered the statements of Mr. Sifuentes' mother and sister, "there is no mitigation in any event." He went on to state that, having reviewed all the evidence, he found that "Rudy Sifuentes participated gladly, even eagerly, in the tortured death of Kevin Greenhalgh."

For the foregoing reasons, the trial justice sentenced Mr. Sifuentes to life imprisonment without the possibility of parole.

### 2. This Court's Review of the Sentence

■ In *State v. Graham*, 941 A.2d 848 (R.I.2008), this Court described as follows the factors which the members of this Court are to consider when, acting pursuant to § 12–19.2–5, we conduct our independent review of the appropriateness (*vel non*) of a sentence of life without the possibility of parole:

"[W]e look to the record, the jury's findings, the trial justice's conclusions, and the character and propensities of the

defendant, including any aggravating circumstances as well as any mitigating factors." *Graham*, 941 A.2d at 866.[13]

After having conducted such an independent review of the transcript of the proceedings below and relevant portions of the record, it is our conclusion that the sentence of life imprisonment without the possibility of parole was appropriate, and we ratify the sentence.

■ In the case at bar, the jury found that Mr. Sifuentes committed first-degree murder "[i]n a manner involving both torture and aggravated battery to Kevin Greenhalgh." After having reviewed the record, we conclude that the evidence in this case overwhelmingly supports the jury's finding that the murder was committed in a manner involving both torture and aggravated battery. The testimony with respect to the severity and barbarity of the injuries sustained by the victim in this case is as disturbing as it is explicit. The medical examiner who performed the autopsy on Mr. Greenhalgh testified at trial that she found numerous bruises and abrasions at various places on his head. She also found cuts to the ear, stab wounds below the ear, and another cut over the cheek and jaw; she described the cut over his cheek and jaw as having been "caused by the tip of the knife dragging along the surface of the skin." The medical examiner described the front part of Mr. Greenhalgh's neck as having a "gaping * * * wide, open inside wound * * * which measured twelve inches from side to side, ripped across both sides of the neck and front of the neck." The muscles of the neck were exposed in a manner which the medical examiner described as being in a

---

13. *See also Tassone*, 749 A.2d at 1119 (stating that this Court is obliged to "examine the record, the findings of the trial justice, and the personal character, record, and propensi-

ties of the defendant" when determining the appropriateness of the sentence of life imprisonment without the possibility of parole).

"very ragged fashion, as if a saw had been cut across the front muscles of the neck." The medical examiner also testified that both the larynx and trachea had been cut and that the jugular veins had also been partially cut—while the spine remained intact. The medical examiner stated that, in her opinion, the wounds to the neck were the result of several motions of the knife. She also found stab wounds, of varying degrees of severity, on the victim's chest, abdomen, legs, thighs, back, and buttocks.

The medical examiner further described the injuries to Mr. Greenhalgh's head as being indicative of blunt force trauma— "consistent with him having been struck with a fist or foot while he was alive." She further testified that, based on certain injuries to the neck area, it was likely that the victim had been subjected to "some sort of neck hold." The medical examiner additionally testified that she would describe various wounds on the victim as "teaser wounds," which she defined as being wounds which would not be "expected to inflict lethal injury * * * [but were] to inflict psychological injury." She stated that the victim's wounds were also consistent with his having been bound during the course of the assault because there were very few defensive injuries. The medical examiner ultimately concluded that Mr. Greenhalgh's death was caused by "a loss of blood, mainly [from] the jugular veins that were cut from the neck wound." She further estimated that, based on the time it takes for fatal blood loss to occur, the victim "lived for at least ten minutes" after receiving the wound to the neck; she added that this was further indicated by the fact that both blood and dirt were found in the victim's lungs. Given this evidence, it is entirely clear to us that the aggravating circumstances of torture and aggravated battery were present in this case.

Additionally, our review of Mr. Sifuentes' "character, record, and propensity for criminal activity" has further led us to conclude that it is unlikely that he will be rehabilitated. *See Graham,* 941 A.2d at 867. In view of that conclusion, we are of the opinion that Mr. Sifuentes presents a continuing danger to the community. The presentence report which was conducted with respect to Mr. Sifuentes reveals that, prior to his being charged with the murder of Mr. Greenhalgh, Mr. Sifuentes had pled *nolo contendre* to no fewer than ten criminal charges—for which he was twice incarcerated at the Adult Correctional Institutions and for which he has served periods of probation (during which periods he twice has been found to have been a probation violator).

We note once more, as we did in our 1995 decision with respect to his appeal from the denial of his Rule 35 motion, that at the time of sentencing Mr. Sifuentes had "failed to accept responsibility and to express remorse for [the] crime." *Sifuentes II,* 667 A.2d at 792.[14] We are in agreement with the trial justice that the evidence presented by petitioner at the time of sentencing did not serve to mitigate the true heinousness of the crime that he committed. The brutality and cold-heartedness that must be present for one to carry out a murder in such a cruel manner are almost unfathomable.

For the foregoing reasons, we conclude that the imposition of the sentence of life imprisonment without the possibility of parole was entirely appropriate.

---

14. *See Graham,* 941 A.2d at 867 (considering the defendant's remorse when reviewing the appropriateness of life imprisonment without the possibility of parole); *see also State v.* *Bertoldi,* 495 A.2d 247, 253 (R.I.1985) (providing that a defendant's remorse may be considered in imposing a criminal penalty).

## III

### Conclusion

For the foregoing reasons, we quash the writ and affirm the petitioner's sentence of life imprisonment without the possibility of parole. The record may be remanded to the Superior Court with our decision endorsed thereon.

Justice INDEGLIA took no part in the consideration or decision of this petition.