March 2, 2022

Cody-Allen Zab       :

      v.       :       No. 2019-459-Appeal.
                                    (PM 17-4195)

Rhode Island Department of       :
Corrections et al.


Jose R. Rivera       :

      v.       :       No. 2019-462-Appeal.
                                    (PC 17-433)

State of Rhode Island Department of  :
Corrections, by and through its
Director, Patricia Coyne-Fague, in
her official capacity.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 or Email opinionanalyst@courts.ri.gov of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| | | |
|---|---|---|
| Cody-Allen Zab | : | |
| v. | : | No. 2019-459-Appeal. |
| | | (PM 17-4195) |
| Rhode Island Department of Corrections et al. | : | |
| | | |
| Jose R. Rivera | : | |
| v. | : | No. 2019-462-Appeal. |
| | | (PC 17-433) |
| State of Rhode Island Department of Corrections, by and through its Director, Patricia Coyne-Fague, in her official capacity. | : | |

Present:  Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

## O P I N I O N

**Justice Lynch Prata, for the Court.**  In these consolidated appeals, the plaintiffs, Cody-Allen Zab (Zab) and Jose R. Rivera (Rivera) (collectively plaintiffs), appeal from Superior Court judgments entered in favor of the defendants, the Rhode Island Department of Corrections (DOC), Director Patricia Coyne-Fague in her official capacity (DOC Director), and Global Tel*Link Corporation (Global)

- 1 -

(collectively defendants).[1]  Before this Court, the plaintiffs argue that the trial court erred in finding that it did not have jurisdiction to hear the plaintiffs' claims based on G.L. 1956 § 13-6-1, Rhode Island's civil death statute (the civil death statute).[2] For the reasons stated herein, we have determined that the entirety of the civil death statute is unconstitutional and in clear contravention of the provisions of article 1, section 5 of the Rhode Island Constitution. [3]

---

[1] Global and Director Patricia Coyne-Fague, in her official capacity, were named defendants only in the Zab action.  In the Superior Court, Global joined in the DOC's motions.  Likewise, before this Court, Global moved to join in the DOC's brief; we granted Global's motion on September 13, 2021.  For sake of clarity, at times throughout this opinion we refer to the defendants collectively, with the understanding that the only named defendant in the Rivera matter is the DOC.

[2] General Laws 1956 § 13-6-1 provides:

> "Every person imprisoned in the adult correctional institutions for life shall, with respect to all rights of property, to the bond of matrimony and to all civil rights and relations of any nature whatsoever, be deemed to be dead in all respects, as if his or her natural death had taken place at the time of conviction. However, the bond of matrimony shall not be dissolved, nor shall the rights to property or other rights of the husband or wife of the imprisoned person be terminated or impaired, except on the entry of a lawfully obtained decree for divorce."

[3] We thank the American Civil Liberties Union of Rhode Island for submission of its thoughtful brief as amicus curiae.

## Facts and Travel

It is undisputed that plaintiffs are serving sentences of life imprisonment at the Adult Correctional Institutions. Zab pled guilty to one count of first-degree murder and arson charges; on April 9, 2008, he was sentenced to life imprisonment. *Zab v. Zab*, 203 A.3d 1175, 1175 (R.I. 2019) (mem.).[4] Rivera was convicted of sexually assaulting three developmentally disabled women and was sentenced to life imprisonment, plus sixteen years. *State v. Rivera*, 987 A.2d 887, 893, 897 (R.I. 2010).[5]

The plaintiffs assert that while imprisoned at the ACI they incurred injuries due to defendants' negligence. Specifically, Zab alleges that his arm was severely burned and permanently disfigured when he made contact with an exposed hot water pipe at the ACI. The pipe was located adjacent to telephones used by inmates, and Zab alleges that defendants knew about the hazard but failed to mitigate the danger it posed. Zab filed suit against defendants in the Superior Court, asserting a federal claim under 42 U.S.C. § 1983 for violation of his constitutional rights, as well as a

---

[4] Zab "set fire to the home of a ninety-five-year-old man in an attempt to recoup a drug debt; the man, who died as a result of the fire, was not [Zab's] intended victim." *Zab v. Zab*, 203 A.3d 1175, 1175 (R.I. 2019) (mem.).

[5] Rivera appealed his conviction to this Court, and we affirmed the judgment of the Superior Court. *State v. Rivera*, 987 A.2d 887, 892 (R.I. 2010). Rivera later appealed from the trial justice's denial of a motion to reduce sentence; the trial justice's decision was affirmed by this Court. *State v. Rivera*, 64 A.3d 742, 743 (R.I. 2013).

state law claim for negligence. Rivera alleges that he suffered a broken ankle when he was ordered by DOC employees to walk across an icy walkway at the ACI and, as a result of the icy and untreated conditions, he slipped and fell. Rivera filed suit against the DOC in the Superior Court, asserting only a state law claim for negligence.

Zab and defendants filed cross-motions for summary judgment, and the DOC filed a motion for judgment on the pleadings in the Rivera action. Arguments and consideration of the motions for summary judgment and the motion for judgment on the pleadings were consolidated in the Superior Court. The issue before the hearing justice was whether plaintiffs' negligence claims were barred by the civil death statute, which provides that "[e]very person imprisoned in the adult correctional institutions for life shall, with respect to all rights of property, to the bond of matrimony and to all civil rights and relations of any nature whatsoever, be deemed to be dead in all respects[.]" Section 13-6-1. In addition, and only as to the Zab case, the hearing justice was faced with whether Zab could establish a § 1983 claim, whether his request for injunctive relief was moot, and whether federal law provided for monetary damages against defendants.

At the conclusion of oral arguments, the hearing justice issued a bench decision, concluding that the civil death statute barred plaintiffs' negligence claims.

The hearing justice also ruled that Zab's § 1983 federal claim failed as a matter of law because Zab had not sued a person, as required by the statute.

On September 11, 2019, the hearing justice entered the following orders and judgments: (1) an order in the Zab matter granting defendants' motion for summary judgment and denying Zab's motion for summary judgment; (2) an order in the Rivera matter granting the DOC's motion for judgment on the pleadings, or alternatively motion for summary judgment; and (3) judgments in both matters in favor of defendants.[6] The plaintiffs filed timely notices of appeal and we granted the parties' joint motion to consolidate the two appeals.

---

[6] Although the DOC filed a motion for judgment on the pleadings in the Rivera case, the hearing justice explicitly granted "[j]udgment on the [p]leadings, or alternatively * * * [s]ummary [j]udgment * * *." We have stated that "if, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment[.]" *Ingram v. Mortgage Electronic Registration Systems, Inc.*, 94 A.3d 523, 527 (R.I. 2014) (brackets omitted) (quoting Super. R. Civ. P. 12(c)). Here, the hearing justice took "judicial notice" that Rivera is serving a life sentence at the ACI and seemingly relied on an affidavit submitted by the DOC with its motion for judgment on the pleadings attesting that Rivera, on the date of the alleged slip and fall—and continuing thereafter—"was an inmate at the [ACI] * * * serving a life sentence." The complaint did not aver that Rivera was serving a life sentence at the ACI.

Because matters outside the pleadings were necessarily considered by the hearing justice, the motion for judgment on the pleadings was properly converted to a motion for summary judgment. We are also satisfied that Rivera was not denied notice or the opportunity to present additional material to the court because he did not object to the affidavit or ask to present additional material of his own. *See Ingram*, 94 A.3d at 527.

**Standard of Review**

"This Court reviews a decision granting a party's motion for summary judgment *de novo*." *Middle Creek Farm, LLC v. Portsmouth Water & Fire District*, 252 A.3d 745, 750 (R.I. 2021) (quoting *Boudreau v. Automatic Temperature Controls, Inc.*, 212 A.3d 594, 598 (R.I. 2019)). We, like the hearing justice, "view the evidence in the light most favorable to the nonmoving party, and if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law, we will affirm the judgment." *Id.* at 751 (quoting *Boudreau*, 212 A.3d at 598).

Moreover, it is well settled that "[t]he judicial branch * * * is the 'ultimate interpreter of the Constitution.'" *In re Advisory Opinion to the Governor*, 732 A.2d 55, 69 (R.I. 1999) (quoting *City of Pawtucket v. Sundlun*, 662 A.2d 40, 58 (R.I. 1995)). Accordingly, "this Court is the only body authorized to finally determine the constitutionality of a statute." *Id.* (citing *Sundlun*, 662 A.2d at 58); *see* R.I. Const., art. 10, § 2 ("The supreme court shall have final revisory and appellate jurisdiction upon all questions of law and equity.").

**Discussion**

On appeal, plaintiffs contend that the civil death statute is unconstitutional because it violates their right to access the courts and seek a remedy for wrong done

to them.  In addition, Zab maintains that the civil death statute is unconstitutional because it prevents him from asserting a § 1983 claim.

## Zab's § 1983 Claim

We first address Zab's claim that the civil death statute violates the Supremacy Clause of the United States Constitution, Article VI, clause 2, because it prevents him from bringing a Superior Court action under § 1983.  The Supremacy Clause "preempts or invalidates state law that interferes or conflicts with any federal law." *Verizon New England Inc. v. Rhode Island Public Utilities Commission*, 822 A.2d 187, 192 (R.I. 2003).  Accordingly, it has been recognized by the United States Supreme Court that "state courts have inherent authority * * * to adjudicate claims arising under the laws of the United States" and that state courts may not be divested of jurisdiction except in narrowly defined circumstances. *Haywood v. Drown*, 556 U.S. 729, 735-36 (2009) (quoting *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990)).

Although Zab contends that the civil death statute is unconstitutional because it divests the Superior Court of jurisdiction to hear his § 1983 claim, it is clear to us that the hearing justice dismissed the § 1983 claim on the merits and not based on the authority of the court to proceed.  In his complaint, Zab sought declaratory relief finding that defendants violated the United States Constitution, injunctive relief ordering defendants to remedy the burn hazard, costs, and "such further relief as this [c]ourt deems fair and just."

The hearing justice found that Zab's § 1983 claim failed on the merits against the DOC and the DOC Director because "the State is not a person," and Zab "has no right of action * * * unless he is suing a person." This Court has recognized that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Pontbriand v. Sundlun*, 699 A.2d 856, 868 (R.I. 1997) (quoting *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989)). Because Zab sued the DOC and the DOC Director in her official capacity, that portion of his complaint based upon § 1983 was properly denied by summary judgment. *See Mills v. State Department of Mental Health Board of Medical Licensure and Discipline*, 863 A.2d 202, 202, 203 (R.I. 2004) (mem.) (recognizing that a "plaintiff is precluded from bringing civil rights actions against the state or its agencies").[7]

---

[7] The hearing justice also expressed his concern "with mootness in some of [Zab's] claims * * * if [the hearing justice] discovered the phones were moved and there were warnings given." The record reveals that an affidavit submitted with defendants' motion for summary judgment attested that the following steps had been taken to remedy the risks presented by the hot pipe(s) near the inmate telephones: (1) covering "with insulation all feeder pipes with which inmates may come into contact"; (2) maintaining the covering and "replacing it after inmates pick at the insulated covering"; (3) posting a memo "in all cell block bulletin boards informing inmates that the heating system had been turned on for the winter so the steam pipes could be hot" and advising them to "use caution and not touch any steam pipes"; and (4) moving the inmate telephones to a new location farther away from the feeder pipes. Zab did not contest that these steps were, in fact, taken. Thus, the record before us reflects that there was no genuine issue of material fact as to whether Zab's claims were moot.

**Plaintiffs' Negligence Claims**

We now turn to plaintiffs' contentions that the civil death statute unconstitutionally divested the Superior Court of authority to hear their negligence claims. The plaintiffs contend that the civil death statute treads upon their constitutional rights, including the right of access to the courts as guaranteed by article 1, section 5 of the Rhode Island Constitution.

The plaintiffs carry the burden of persuading this Court that the civil death statute "violates a specific provision of the state constitution or the United States Constitution[.]" *Moreau v. Flanders*, 15 A.3d 565, 574 (R.I. 2011) (brackets omitted) (quoting *Mackie v. State*, 936 A.2d 588, 595 (R.I. 2007)). It is well settled that "[t]his Court approaches constitutional questions with great deliberation, caution, and even reluctance[.]" *Id.* at 573. Accordingly, "[i]n reviewing the constitutionality of statutes, 'we begin with the principle that legislative enactments of the General Assembly are presumed to be valid and constitutional.'" *Id.* (quoting *Newport Court Club Associates v. Town Council of Middletown*, 800 A.2d 405, 409 (R.I. 2002)). We attach to the statute in question "every reasonable intendment in favor of constitutionality" and will not "declare a statute void unless we find it to be constitutionally defective beyond a reasonable doubt." *Id.* at 573, 574.

This Court has interpreted the plain and unambiguous language of the civil death statute as declaring "that a person * * * who is serving a life sentence, is

deemed civilly dead and thus does not possess most commonly recognized civil rights[,]" including the ability to assert civil actions. *Gallop v. Adult Correctional Institutions*, 182 A.3d 1137, 1141 (R.I. 2018) (*Gallop II*). Until today this Court has not addressed the constitutionality of the civil death statute. *See Gallop v. Adult Correctional Institutions*, 218 A.3d 543, 550 (R.I. 2019) (*Gallop III*) (declining to address arguments that the civil death statute is unconstitutional because the issue was barred by the "raise-or-waive" rule and procedural law).

The plaintiffs allege that the civil death statute violates article 1, section 5 of the Rhode Island Constitution. They contend that article 1, section 5 creates a fundamental right of access to the courts and that the civil death statute impermissibly denies them this right.

### Applicability of Article 1, Section 5

Article 1, section 5 of the Rhode Island Constitution declares that:

> "Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs which may be received in one's person, property, or character. Every person ought to obtain right and justice freely, and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

We first consider the threshold question of whether plaintiffs' arguments are inapposite because "article 1, section 5, is not a self-executing constitutional provision[.]" *Smiler v. Napolitano*, 911 A.2d 1035, 1039 n.5 (R.I. 2006). This Court

- 10 -

has recognized that claims brought under constitutional provisions that are not self-executing do not give rise to a private cause of action and, thus, cannot be maintained. *See Doe v. Brown University*, 253 A.3d 389, 399, 401 (R.I. 2021) (holding that plaintiffs could not maintain a cause of action under the antidiscrimination clause of the Rhode Island Constitution because the clause was not self-executing); *Bandoni v. State*, 715 A.2d 580, 595 (R.I. 1998) (holding that plaintiffs could not maintain a cause of action for money damages under a constitutional amendment that was not self-executing).

Very significantly, plaintiffs are not asserting new substantive rights by invoking article 1, section 5 as a basis for a private cause of action. *Cf. Henry v. Cherry & Webb*, 30 R.I. 13, 30, 73 A. 97, 107 (1909) (pointing out that article 1, section 5 is not self-executing and cannot give rise to new causes of action because "the form and extent of [an adequate legal remedy] is necessarily subject to the legislative power") (quoting *In re Nichols*, 8 R.I. 50, 54 (1864)). The plaintiffs do not allege a violation of article 1, section 5 for purposes of obtaining money damages. Rather, plaintiffs have alleged common law negligence actions against defendants in the Superior Court pursuant to G.L. 1956 § 8-2-14, which provides that "[t]he superior court * * * shall have exclusive original jurisdiction of all * * * actions at law in which the amount in controversy shall exceed the sum of ten thousand dollars[.]" The hearing justice ruled that plaintiffs are being prohibited

from asserting those claims by virtue of the civil death statute, and they seek to invoke article 1, section 5 to "protect[] access to our state's courts." *Smiler*, 911 A.2d at 1039 n.5 (quoting *Binette v. Sabo*, 710 A.2d 688, 692 (Conn. 1998)).

Indeed, this Court has recognized that the purpose of article 1, section 5 is to "forbid[] the total denial of access to the courts for the adjudication of a recognized claim." *Bandoni*, 715 A.2d at 595; *see also Bartlett v. Danti*, 503 A.2d 515, 518 (R.I. 1986) (conducting judicial review of a statute based on article 1, section 5 and finding that the statute was unconstitutional because it prevented litigants from effectively pursuing claims); *Lemoine v. Martineau*, 115 R.I. 233, 239, 342 A.2d 616, 621 (1975) (invalidating a statute that impinged on "art. I, § 5's edict that any person having recourse to the legal processes shall be afforded the opportunity of having the wrong he sustained remedied promptly and without delay"). Therefore, we are of the opinion that, as a matter of state constitutional law, plaintiffs' challenges to the constitutionality of the civil death statute are not barred simply because article 1, section 5—the basis for those challenges—is not self-executing.

**Constitutionality of the Civil Death Statute**

We now turn to the constitutionality of the civil death statute. Article 1 of the Rhode Island Constitution "established, maintained, and preserved" certain "essential and unquestionable rights" that "shall be of paramount obligation in all legislative, judicial and executive proceedings." R.I. Const., art. 1, Intro. Thus, since

- 12 -

1843 when the Rhode Island Constitution first became effective, the people of this state have enjoyed a constitutionally protected right of access to the courts. R.I. Const., art. 1, § 5 ("Every person within this state ought to find a certain remedy, by having recourse to the laws, for all injuries or wrongs" and should "obtain right and justice freely, * * * completely and without denial[.]").  The right of access to the courts is a fundamental right guaranteed by the state constitution. *See Palazzo v. Alves*, 944 A.2d 144, 150 (R.I. 2008) (stating that statutes that limit citizens' ability to bring lawsuits must "be limited in scope lest the constitutional right of access to the courts * * * be improperly thwarted").

The defendants argue that the civil death statute does not impinge on the right of access to the courts because, they contend, it only prohibits a life prisoner's "ability to pursue a negligence claim for damages."  However, the sweep of the civil death statute is actually far broader.  The General Assembly may, without violating article 1, section 5, enact "laws that may limit a party from bringing a claim in our courts." *Kennedy v. Cumberland Engineering Company, Inc.*, 471 A.2d 195, 198 (R.I. 1984).  However, the limitations imposed must be "reasonable" and may not "total[ly] den[y] * * * access to the courts for adjudication of a claim even before it arises[.]" *Id.*; *see State v. D'Amario*, 725 A.2d 276, 280-81 (R.I. 1999) (holding that, as part of a plea agreement, a defendant could waive his right to file *pro se* actions in the Superior Court for a period of three years where the hearing justice found that

the defendant being allowed to proceed *pro se* constituted a real threat of abuse to the judicial system and that the condition constituted a reasonable limitation).

As this Court has recognized, the civil death statute extinguishes a life prisoner's civil rights "by operation of law" and prevents such a prisoner from bringing *any* civil actions in state courts. *Gallop II*, 182 A.3d at 1141. In our view, this amounts to a complete bar on a life prisoner's right to access the courts that is inconsistent with article 1, section 5. *See Cok v. Read*, 770 A.2d 441, 444, 445 (R.I. 2001) (vacating an order that prohibited a plaintiff from appearing as a *pro se* litigant in any Superior Court civil action because the "[a]cross the board restriction[] to court access" was not supported by specific findings that the "abuse is so continuous and widespread as to suggest no reasonable alternative" (quoting *Cok v. Family Court of Rhode Island*, 985 F.2d 32, 36 (1st Cir. 1993))). Moreover, the constitutional "requirement of access to the courts is not dependent on the type of legal matter involved * * * and indeed may extend to all civil actions[.]" *Souza v. Travisono*, 368 F. Supp. 959, 966 (D.R.I. 1973), *aff'd*, 498 F.2d 1120, 1124 (1st Cir. 1974). Therefore, we conclude that in completely eliminating access to the courts, the civil death statute plainly infringes on plaintiffs' rights under article 1, section 5.

Having determined that the civil death statute implicates "an expressly enumerated constitutional right" under our state constitution, "this Court must examine the statute with 'strict scrutiny.'" *Cherenzia v. Lynch*, 847 A.2d 818, 823

- 14 -

(R.I. 2004) (quoting *Kennedy v. State*, 654 A.2d 708, 712 (R.I. 1995)). Because strict scrutiny is the proper basis under which to examine the civil death statute, "the burden is no longer on the challenger to prove that it is unconstitutional beyond a reasonable doubt." *Federal Hill Capital, LLC v. City of Providence by and through Lombardi*, 227 A.3d 980, 985 n.6 (R.I. 2020). Rather, the burden shifts to "the state to demonstrate that the legislation was 'justified by a compelling government interest and was narrowly drawn to serve that interest[.]'" *Id.* (brackets omitted) (quoting *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 799 (2011)).

In support of their contention that the civil death statute is constitutional, defendants advance a single governmental interest: that it functions as an additional sanction imposed upon some of the state's worst criminals and furthers the goals of punishment and deterrence. This Court has recognized that "[t]he loss of civil status as a form of punishment is a principle that dates back to ancient societies." *Gallop II*, 182 A.3d at 1140-41. However, it is our opinion that this particular additional punishment is not a compelling reason to override the right of access to the courts that is textually guaranteed by the Rhode Island Constitution.

Moreover, even assuming, *arguendo*, that additional punishment upon the life-imprisoned is a compelling government interest—which we do not believe to be the case—the civil death statute is not narrowly drawn to serve that interest. The statute implicates the rights of "[e]very person imprisoned in the [ACI] for life[,]"

- 15 -

§ 13-6-1, without distinguishing between those prisoners sentenced to life with the possibility of parole as contrasted with those prisoners sentenced to life without the possibility of parole. *See State v. Sifuentes*, 996 A.2d 1130, 1135 (R.I. 2010) (categorizing a "sentence of life imprisonment without the possibility of parole [a]s the harshest sentence that can be imposed in this state").

Here, this Court has—for the first time—been directly confronted with the constitutionality of § 13-6-1 of the general laws. *Cf. Gallop III*, 218 A.3d at 550 (declining to reach the issue of constitutionality of § 13-6-1 because it was waived by the "raise-or-waive" rule and procedural law); *Gallop II*, 182 A.3d at 1143 (addressing whether § 13-6-1 was applicable to bar the plaintiff's claims). After careful consideration, we have determined that the entirety of this statute is unconstitutional and in clear contravention of the provisions of article 1, section 5 of the Rhode Island Constitution because it completely deprives individuals of an expressly enumerated constitutional right. *See United States v. Butler*, 297 U.S. 1, 63 (1936) ("This [C]ourt neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends."). The civil death statute deprives those persons imprisoned at the ACI for life of their right to bring civil actions in our state courts. It is clear to us that the right infringed upon by the civil death statute is the right to

seek redress for *any* type of injury or complaint, thereby unconstitutionally denying the plaintiffs the very right to gain access to the courts.

**Conclusion**

For the foregoing reasons, that portion of the order entered in the Zab action, PM 17-4195, on September 11, 2019, that grants the defendants' motion for summary judgment as to Zab's negligence claim, is reversed. That portion of said order that grants summary judgment in favor of the defendants on Zab's claim under 42 U.S.C. § 1983 in affirmed. In addition, that portion of the final judgment entered in the Zab matter on September 11, 2019, that grants judgment in favor of the defendants on Zab's negligence claim is vacated, and that portion of said judgment that grants judgment in favor of the defendants on Zab's § 1983 claim is affirmed.

Further, the order entered in the Rivera matter, PC 17-433, on September 11, 2019, granting summary judgment in favor of the DOC is reversed; the judgment entered in said matter of even date is vacated.

The papers in these cases shall be returned to the Superior Court with direction to enter new orders in both matters consistent with this opinion. Moreover, the Superior Court is directed to enter a new judgment in the Zab matter consistent with this opinion.

**Justice Goldberg, dissenting.** Today, the majority has declared unconstitutional the civil death statute, G.L. 1956 § 13-6-1. The majority decision rests solely upon article 1, section 5 of the Rhode Island Constitution. Because I am convinced that this case can and should be decided on nonconstitutional grounds and does not present circumstances warranting such an urgency to delve into constitutional issues, I respectfully dissent. In accordance with our well-settled jurisprudence discussed *infra*, Rhode Island's civil death statute should be addressed in a proper manner—that is, prospectively by the General Assembly.

First, it is worth noting that this Court has never held that § 13-6-1 bars life prisoners from asserting all claims. *See Carillo v. Moran*, 463 A.2d 178, 180-81 (R.I. 1983) (Rhode Island life prisoner raising a constitutional challenge to a search and seizure conducted while he was in prison) (citing *State v. Carillo*, 122 R.I. 392, 394-95, 407 A.2d 491, 493 (1979)); *cf. Clark v. Moran*, 942 F.2d 24, 25 (1st Cir. 1991) (Rhode Island life prisoner being held at the ACI seeking habeas corpus relief in federal court). In *Palmigiano v. Garrahy*, 443 F. Supp. 956 (D.R.I. 1977), a life prisoner launched a class-action lawsuit on behalf of all prisoners in the ACI, "including lifers," challenging the conditions of confinement. *See Palmigiano*, 443 F. Supp. at 959, 967. That case spawned decades-long litigation regarding virtually every aspect of the ACI, leading to the appointment of a "Master" in order to vindicate the rights of the prisoner class. *See id.* at 986, 989.

The only issue before this Court in the cases at bar is whether the civil death statute bars plaintiffs from bringing the instant *negligence* claims against the prison where plaintiffs are serving life sentences for horrific crimes. We have already answered this question. In *Gallop v. Adult Correctional Institutions*, 182 A.3d 1137 (R.I. 2018) (*Gallop II*), a unanimous Court definitively held that the Superior Court did not have authority to hear the life-prisoner plaintiff's negligence claim. *See Gallop II*, 182 A.3d at 1141.[1]

"In the typical case, this Court is 'quite reluctant to reach constitutional issues when there are adequate non-constitutional grounds upon which to base our rulings.'" *Mackie v. State*, 936 A.2d 588, 596 (R.I. 2007) (quoting *State v. Lead Industries Association, Inc.*, 898 A.2d 1234, 1239 (R.I. 2006)). The facts of this case give me no reason to deviate from established jurisprudence in *Gallop II*. "This [C]ourt has explicitly held that article 1, section 5, 'should not be interpreted to bar the General Assembly from enacting laws that limit or place a burden upon a party's right to bring a claim in our courts.'" *Dowd v. Rayner*, 655 A.2d 679, 683 (R.I. 1995) (quoting *Walsh v. Gowing*, 494 A.2d 543, 547 (R.I. 1985)). Although we have recognized that a statute cannot "prohibit court access absolutely for a generally recognized claim to a class of plaintiffs[,]" *Kennedy v. Cumberland Engineering*

---

[1] The constitutionality of the civil death statute under article 1, section 5 of the Rhode Island Constitution was not raised in *Gallop v. Adult Correctional Institutions*, 182 A.3d 1137 (R.I. 2018); thus, this issue was not before us.

- 19 -

*Company, Inc.*, 471 A.2d 195, 198 (R.I. 1984), we should refrain from looking beyond the facts of the case before us. *See State v. Russell*, 890 A.2d 453, 459, 462 (R.I. 2006) ("When a limiting construction can be placed on a statute to save its constitutionality, an overbreadth analysis should be avoided. * * * [T]his Court's review of a vagueness challenge to a statute is limited to 'the facts of the case at hand.' * * * We will not consider how the statute may apply to a hypothetical defendant in another case[.]") (quoting *State v. Fonseca*, 670 A.2d 1237, 1240 (R.I. 1996)); *see also State v. Berberian*, 416 A.2d 127, 129 (R.I. 1980) (same).

Prison inmates, especially life prisoners, are not entitled to the same degree of constitutional rights as are members of society at large, and that includes the right to bring tort claims against the warden for a slip and fall or a burned hand. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001) ("We nonetheless have maintained that the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large."); *see also Lewis v. Casey*, 518 U.S. 343, 354, 355 (1996) ("Nearly all of the access-to-courts cases in the *Bounds* line involved attempts by inmates to pursue direct appeals from the convictions for which they were incarcerated, * * * or habeas petitions[.] * * * *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims.") (citing *Bounds v. Smith*, 430 U.S. 817 (1977)); *Turner v.*

*Safley*, 482 U.S. 78, 96 (1987) (distinguishing between typical inmates and life prisoners with respect to the constitutional right to marriage). These considerations should control our analysis in this case, and we should be mindful that we are addressing issues concerning persons incarcerated with life sentences for horrific crimes and under the control of the warden, whose obligations to provide an orderly and secure institution are paramount.

"Repeal is the province of the Legislature." *Gallop II*, 182 A.3d at 1141. It is a longstanding principle that the "function of adjusting remedies to rights is a legislative rather than a judicial one[.]" *Henry v. Cherry & Webb*, 30 R.I. 13, 37, 73 A. 97, 107 (1909); *see Fournier v. Miriam Hospital*, 93 R.I. 299, 305, 175 A.2d 298, 301 (1961) ("This [C]ourt * * * [has] observed that, '[a]lthough, in a free government, every man is entitled to an adequate legal remedy for every injury done to him, yet the form and extent of it is necessarily subject to the legislative power * * *.'") (quoting *In re Nichols*, 8 R.I. 50, 54 (1864)). Common law rights can be limited or abrogated by the Legislature. *See Kennedy*, 471 A.2d at 199 ("[T]his [C]ourt [has] noted the Legislature's power to alter the substance of the common law."). In my more than two decades of service on this Court, I cannot recall ever having declared a statute to be unconstitutional; this should not be the first case with such a drastic result in light of our longstanding jurisprudence.

Therefore, in my opinion, because the facts of this case do not warrant a usurpation of the legislative power, this Court should allow the General Assembly an opportunity to address the constitutional concerns that the majority raises, as we have done in previous cases. *See State by and through Kilmartin v. Rhode Island Troopers Association*, 187 A.3d 1090, 1102 (R.I. 2018) (noting that the General Assembly responded to the Court's abrogation of sovereign immunity in *Becker v. Beaudoin*, 106 R.I. 562, 261 A.2d 896 (1970) by enacting the Governmental Tort Liability Act); *see also Lacey v. Reitsma*, 899 A.2d 455, 458 (R.I. 2006) (applying the recreational use statute, but noting the Court's concerns and affording the Legislature an opportunity to revisit the statute: "Perhaps the time has come for the General Assembly to revisit the provisions of the Recreational Use Statute[.]"); *Barrett v. Barrett*, 894 A.2d 891, 895 (R.I. 2006) (noting that in *Digby v. Digby*, 120 R.I. 299, 388 A.2d 1 (1978) the General Assembly responded to the Court's abrogation of interspousal immunity by statutorily abrogating the doctrine); *Digby*, 120 R.I. at 305, 388 A.2d at 4 (granting a brief stay of prospective abrogation of interspousal immunity); *Becker*, 106 R.I. at 571-72, 261 A.2d at 901-02 (granting a brief stay of execution to afford the General Assembly an opportunity to enact legislation regarding municipal tort immunity).

Finally, it is my belief that the majority's opinion will unnecessarily open the floodgates to frivolous inmate claims that will interfere with the orderly operation

of the ACI.  For this reason alone, this Court should have declared an intermission,

rather than rush to judgment and interfere with the General Assembly's role.

Consequently, I respectfully dissent.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Cody-Allen Zab v. Rhode Island Department of Corrections et al.<br><br>Jose R. Rivera v. State of Rhode Island Department of Corrections, by and through its Director, Patricia Coyne-Fague, in her official capacity. |
| **Case Number** | No. 2019-459-Appeal.<br>(PM 17-4195)<br><br>No. 2019-462-Appeal.<br>(PC 17-433) |
| **Date Opinion Filed** | March 2, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Sonja L. Deyoe, Esq. |
| | For Defendants:<br><br>Katherine C. Sadeck<br>Department of Attorney General |